**Rezi P. FORSHEY, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 96–1038.**

United States Court of Veterans Appeals.

Dec. 3, 1998.

72

Theodore C Jarvi, Tempe, AZ, was on the brief, for appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Adam K. Llewellyn, Washington, DC, were on the brief, for appellee.

Before KRAMER, FARLEY, and STEINBERG, Judges.

KRAMER, Judge:

The appellant, Rezi P. Forshey, appeals a May 31, 1996, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for the cause of the veteran's death. Record (R.) at 1–13. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA.

## I. RELEVANT BACKGROUND

The appellant is the widow of the veteran, Charles O. Forshey. R. at 24. The veteran died while on active duty in the U.S. Navy on August 19, 1990, from neck and chest injuries sustained in a motorcycle accident that day.

R. at 47. The veteran was riding on a winding rural road while not wearing a helmet when his motorcycle went off the road and crashed into a large boulder. R. at 56. A police report describing the accident noted that the weather was clear, the road surface was dry, it was daylight, and there was no sign of a mechanical failure of the motorcycle or its tires. R. at 32, 56. Witnesses at the scene did not observe what caused the veteran to lose control of his motorcycle; however, they did see him drift off the asphalt road onto the dirt shoulder, lose control of the motorcycle, and go down on his side. R. at 36–37. According to the police report, the posted speed limit for the turn was twenty miles per hour. R. at 35. Based upon witness accounts, the police estimated that the veteran's speed was not more than thirty miles per hour. *Id.* Toxicology findings from an autopsy performed the next day revealed a blood alcohol level of 0.139%. R. at 47. A Navy accident investigation report concluded that "[a]lcohol was a contributing factor to the accident." R. at 54. The investigation, however, offered no opinions concerning whether the veteran's death was in the line of duty or whether his own willful misconduct resulted in his death. R. at 57. At a personal hearing, the appellant testified, inter alia, that the road where the accident occurred was a "winding, twisting, uphill, downhill road" with two blind spots, loose dirt, and a drainage ditch near the scene of the accident. R. at 84. She also testified that the veteran was a "very experienced" motorcycle rider who was "very" familiar with the road where the accident occurred. R. at 83–84.

In its decision, the Board analyzed the evidence showing that the veteran was intoxicated and what it referred to as the "negative evidence"—the evidence tending to negate an inference that the accident resulted from a cause other than the veteran's intoxication. R. at 12–13. Analysis of the former included consideration of a treatise that indicated that a blood alcohol level in the range of 0.080% to 0.100% results in intoxication that, in turn, results in loss of judgment and muscular coordination. R. at 9. As part of its analysis, the Board addressed the Navy accident investigation report conclusion that

alcohol was a factor contributing to the accident and noted: "Standing alone this opinion is insufficient to establish that alcohol was the proximate cause of the veteran's death as it falls short of saying that the accident would not have occurred if the veteran had not consumed alcohol." R. at 10–11. However, taking into consideration the investigation report, the police report, the witness statements, the autopsy report, and the treatise, the Board, in essence, first concluded that the veteran's intoxication was the proximate cause of his fatal injuries. R. at 13. Accordingly, the Board concluded that the veteran's death was the result of willful misconduct and denied the appellant's claim for service connection for the cause of the veteran's death. *Id.*

## II. ANALYSIS

### A. Generally Applicable Law

■ Pursuant to 38 U.S.C. § 1310, dependency and indemnity compensation (DIC) is paid to a surviving spouse of a qualifying veteran who died from a service-connected disability. *See Hanna v. Brown,* 6 Vet.App. 507, 510 (1994). Under 38 U.S.C. § 105(a), there is a presumption that an injury incurred during active military, naval, or air service was incurred in the line of duty unless the injury was a result of the person's own willful misconduct. A finding of "willful misconduct" negates the "line of duty" presumption.

> [I]n all cases[,] section 105 establishes a presumption in favor of a finding of line of duty. If the BVA finds that an exception does apply (in this case, willful misconduct), and denies the claim solely on the basis of such exception, the Board must establish that denial of the claim is justified by a preponderance of the evidence.

*Smith v. Derwinski,* 2 Vet.App. 241, 244 (1992). "Willful misconduct" is defined as "an act involving conscious wrongdoing or known prohibited action"; "[i]t involves deliberate or intentional wrongdoing" and "must be the proximate cause of injury, disease or death." 38 C.F.R. § 3.1(n)(1),(3) (1998); *see Daniels v. Brown,* 9 Vet.App. 348, 350–51 (1996). "Proximate cause" is defined

as "that which, in a natural continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred." BLACK'S LAW DICTIONARY 1225 (6th ed.1990); *see also Robinette v. Brown,* 8 Vet.App. 69, 78 (1995) (relying on BLACK'S LAW DICTIONARY definition of "evidence"). If intoxication results proximately and immediately in disability or death, the disability or death will be considered to be the result of the person's own willful misconduct. *See* 38 C.F.R. § 3.301(c)(2) (1998); *Gabrielson v. Brown,* 7 Vet.App. 36, 41 (1994). A determination by the Board that the veteran's death was the result of his own willful misconduct is a finding of fact that the Court reviews for clear error under 38 U.S.C. § 7261(a)(4). *See Daniels,* 9 Vet.App. at 351; *Cropper v. Brown,* 6 Vet.App. 450, 452 (1994). "The Board's findings constitute clear error only where they are not supported by a plausible basis in the record." *Solomon v. Brown,* 6 Vet.App. 396, 401 (1994); *see also Cohen v. Brown,* 10 Vet.App. 128, 150 (1997); *Buzinski v. Brown,* 6 Vet.App. 360, 365 (1994); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Under this standard we cannot reverse a finding simply because we would have reached a different conclusion based upon the same record. *Gilbert,* 1 Vet.App. at 53. In order to reverse a finding under this standard, the evidence of record must leave the Court with "a definite and firm conviction that a mistake has been committed." *Id.* at 52 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

### B. The Board's Finding of Proximate Cause

■ The appellant's main argument is that the evidence is legally insufficient to support a finding that the veteran's driving while intoxicated was the proximate cause of his death, and that, therefore, the Board's finding to that effect was clearly erroneous. In reaching its conclusion that intoxication was the proximate cause of the veteran's death, the Board considered what it referred to as "negative evidence," which is the evidence tending to disprove the existence of an intervening cause of the accident other than alcohol consumption. This included evidence indicating that the road surface was dry, that the weather was clear, that it was broad daylight, and that there was no apparent malfunction of the motorcycle. R. 12–13. The appellant argues that the Board impermissibly used this negative evidence to conclude that intoxication was the proximate cause of the accident. She points to the Board's admission that "[s]tanding alone [the Navy accident investigation report] is insufficient to establish that alcohol was the proximate cause of the veteran's death as it falls short of saying that the accident would not have occurred if the veteran had not consumed alcohol." R. at 10–11. On these bases she argues, in essence, that the Board's finding of proximate cause is clearly erroneous because it was explicitly based upon negative evidence in that the Board admitted that the Navy accident investigation report was insufficient evidence standing alone.

The crux of the appellant's argument is that the evidence tending to negate an inference that the accident was caused by an intervening cause is irrelevant to a determination of proximate cause. This argument is without merit. The definition of "proximate cause" clearly makes the possible existence of an intervening cause a relevant inquiry. *See* BLACK'S LAW DICTIONARY, *supra.* "Evidence" in turn is defined as: "All the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established *or disproved.*" *Id.* at 555 (emphasis added); *see also Robinette, supra.* In short, evidence is anything that tends to make the existence of a relevant fact more or less likely. In this case the so-called "negative evidence" tends to disprove the existence of an intervening cause, which is relevant to a determination of proximate cause. Therefore, the Board acted properly in considering this evidence.

The Court has reviewed the evidence of record, including the "negative evidence." Given that: the autopsy performed the day after the accident reported a blood alcohol level of 0.139% (R. at 47); the treatise cited by the Board indicates that this level is above that which produces intoxication resulting in loss of judgment and coordination (R. at 9);

the witnesses stated that the veteran drifted off the asphalt road onto the dirt shoulder, losing control, and that they did not see any object or event that might have caused him to lose control (R. at 36–37); the appellant testified that the veteran was experienced with both motorcycle riding and the road where the accident occurred (R. at 84); the road conditions were good (R. at 32); it was daylight (*id.*); and no mechanical failure of the motorcycle was found (*id.*); the Court concludes that the Board's finding that the veteran's intoxication was the proximate cause of his death is "plausible" and therefore not clearly erroneous. *See Solomon, Cohen, Buzinski,* and *Gilbert,* all *supra.*

The appellant makes a related argument concerning the Board's finding of willful misconduct. Appellant's Brief at 7–8. She points to a provision in VA's Adjudication Procedure Manual M21–1 [hereinafter Manual M21–1] that states: "Exercise care to guard against findings of willful misconduct on the basis of inconclusive evidence." MANUAL M21–1, Part IV, ¶ 11.04(c)(1) (Mar. 25, 1996) (which governs willful misconduct determinations in cases involving alcohol consumption). Thus, in essence, she argues that a finding of willful misconduct must be based upon conclusive evidence. The Court has held that Manual M21–1 provisions that affect substantive rights are the equivalent of VA regulations and that VA is not free to ignore its own regulations. *See Cohen,* 10 Vet.App. at 139; *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990). The Court notes that the full text of the Manual M21–1 provision cited by the appellant is: "Determinations of willful misconduct in such instances will depend on the facts found. Exercise care to guard against findings of willful misconduct on the basis of inconclusive evidence. An adverse determination requires that there must be excessive indulgence as the proximate cause of the disability or death in question." *Id.* In addition, MANUAL M21–1, Part IV, ¶ 11.04(c)(2) indicates that a laboratory test showing a blood alcohol level of .100% or more creates a presumption of intoxication. Given the evidence cited in the preceding paragraph and the presumption of intoxication created by Manual M21–1, the Court holds that the evidence of record is sufficient to meet the Manual's requirement of not making a willful misconduct determination based upon inconclusive evidence.

## C. The Appellant's Other Arguments

■■■ The appellant argues that VA failed to fulfill its duty to assist under 38 U.S.C. § 5107(a) because the police report of record indicated that photographs were taken of the accident scene shortly after the accident occurred and that VA failed to obtain these photographs. When a claimant presents a well-grounded claim for VA benefits, VA has a duty to assist the claimant "in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a); *see Allday v. Brown,* 7 Vet.App. 517, 526 (1995); *Littke v. Derwinski,* 1 Vet. App. 90, 91–92 (1990); *Murphy v. Derwinski,* 1 Vet.App. 78, 81–82 (1990) (once claimant submits plausible claim, i.e., one which is meritorious on its own or capable of substantiation, Secretary is obligated to assist in developing facts pertinent to claim); *see also Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). Although it is not contested that the appellant has submitted a well-grounded claim, thus triggering the duty to assist, she fails to offer any basis for believing that the evidence already of record concerning the accident scene was somehow incomplete or that the photographs, taken by the same police officer who filed the report concerning the state of the accident scene, would somehow contradict the officer's written report. The statute creating the Court states that "[t]he Court shall take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b); *see Edenfield v. Brown,* 8 Vet.App. 384, 390–91 (1995) (en banc). Because the appellant has not offered a basis for believing that the photographs would be anything but cumulative of evidence already in the record, the Court holds that any error that may have occurred in failing to obtain the police photographs was not prejudicial to the appellant.

Next, the appellant argues that the Board's statement of reasons or bases was inadequate because it failed to discuss the fact that the tire tracks on the dirt shoulder of the road were obliterated by the movement of witnesses and emergency vehicles before they could be recorded by the police. The Board is required to provide a written

statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday,* 7 Vet.App. at 527; *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Gilbert,* 1 Vet.App. at 57. The appellant fails to provide a basis for the Court to find that this fact is probative of any relevant issue. Upon review, the Court cannot say that the Board's failure to discuss this fact in any way undermines its decision. Accordingly, we find no error.

Similarly, the appellant argues that the Board failed to consider properly her testimony that the road was "a winding, twisting, uphill, downhill road" with two blind spots, loose dirt, and a drainage ditch near the scene of the accident. R. at 84–85. The Board quotes the police report, which stated that the road "winds through a residential area" (R. at 5), acknowledges one description of the road as narrow and winding (R. at 6), and, in its analysis, describes the road as "a rural road with a dusty shoulder" (R. at 10). Furthermore, there is nothing in the Board's decision that indicates that it was under any misimpression as to the nature of the road where the accident occurred. Therefore, the Court finds no error in the Board's failure to acknowledge explicitly the appellant's testimony on that topic.

Finally, the appellant argues that the Board failed to resolve reasonable doubt in her favor as required by 38 C.F.R. § 3.102 (1997). However, twice in its decision the Board recognized that "in light of the benefit of the doubt rule, the preponderance of the evidence must be against the claim for benefits to be denied." R. at 12; *see also* R. at 3, 8 (citing *Gilbert,* 1 Vet.App. at 53–54), 13. Nonetheless, the Board concluded that the preponderance of the evidence was against the claim. Accordingly, the Board did not fail to consider the benefit of the doubt rule in the appellant's case.

### III. CONCLUSION

Upon consideration of the above analysis, the parties' pleadings, and the record on appeal, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error that requires reversal or remand. *See* 38 U.S.C. §§ 5107, 7104(d), 7261; *Gilbert,* 1 Vet.App. at 52–53. The May 31, 1996, BVA decision is AFFIRMED.