**Rezi P. FORSHEY, Claimant–Appellant,**

v.

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Respondent–Appellee.**

No. 99–7064.

United States Court of Appeals, Federal Circuit.

Sept. 20, 2000

dence, we vacate the judgment and remand the case.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

Virginia M. Lum, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and David J. Barrans, Staff Attorney, Department of Veterans Affairs, of Washington, DC.

Before MAYER, Chief Judge,
NEWMAN and SCHALL, Circuit Judges.

Opinion for the court filed by Chief Judge MAYER in which Circuit Judge PAULINE NEWMAN joins. Dissenting opinion filed by Circuit Judge SCHALL.

MAYER, Chief Judge.

Rezi P. Forshey appeals the judgment of the United States Court of Appeals for Veterans Claims denying her dependency and indemnity compensation for the death of her husband. *See Forshey v. West,* 12 Vet.App. 71 (1998). Because we do not agree that the presumption of service-connection under 38 U.S.C. § 105(a) may be rebutted by a preponderance of the evi-

*Background*

Forshey is the widow of Charles O. Forshey, who served in the United States Navy from 1975 until his death on August 19, 1990, from injuries sustained as the result of a motorcycle accident. A Navy accident investigation did not determine the ultimate cause of the accident, but concluded that alcohol was a contributing factor. Subsequently, Forshey filed a claim for dependency and indemnity compensation.

For a spouse to qualify for such benefits, the veteran's death must be service-connected, unless the death occurs under the circumstances described in 38 U.S.C. § 1318. *See* 38 U.S.C. § 1310 (1994). There is a rebuttable presumption that a death that occurred during active military service was in the line of duty. *See id.* § 105(a).[1] This presumption controls unless it is shown that the death was a result of the veteran's willful misconduct or the abuse of alcohol or drugs. *See id.* A Department of Veterans Affairs regulation provides that "[t]he simple drinking of alcoholic beverage is not of itself willful misconduct.... If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results proximately and immediately in disability or death, the disability or death will be considered the result of the person's willful misconduct." 38 C.F.R. § 3.301(c)(2) (1991). Applying this regulation, the Regional Office denied Forshey's claim, finding that her husband's intoxication constituted willful misconduct that proximately caused his death.

1. 38 U.S.C. § 105(a) provides:
An injury or disease incurred during active military, naval, or air service will be deemed to have been incurred in line of duty and not the result of the veteran's own misconduct when the person on whose account benefits are claimed was, at the time the injury was suffered or disease contracted, in active military, naval, or air service, whether on active duty or on authorized leave, unless such injury or disease was a result of the person's own willful misconduct or abuse of alcohol or drugs. Venereal disease shall not be presumed to be due to willful misconduct if the person in service complies with the regulations of the appropriate service department requiring the person to report and receive treatment for such disease.

Forshey appealed the Regional Office determination to the Board of Veterans' Appeals, which concluded that a preponderance of the evidence weighed against Forshey's claim because there was evidence of intoxication and the absence of an alternative explanation for the accident. Forshey appealed this ruling to the Court of Appeals for Veterans Claims which affirmed, holding that she failed to demonstrate any factual or legal error that would warrant reversing the board decision. On appeal here, Forshey argues that 38 C.F.R. § 3.301(c)(2) is invalid because it contains no standard of proof, or stated another way, that it was error to interpret 38 U.S.C. § 5107(b)[2] so as to allow the presumption of service-connection to be rebutted by a mere preponderance of the evidence.

## *Discussion*

### I.

██ The government suggests two impediments to our review: the issue was not decided by or raised before the lower court. We have jurisdiction to review the Court of Appeals for Veterans Claims' interpretation of statutes and regulations by virtue of 38 U.S.C. § 7292 (Supp. IV 1998): "[A]ny party ... may obtain a review of the decision with respect to the validity of any statute or regulation ... or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court [of Appeals for Veterans Claims] in making the decision." *See Smith v. West,* 214 F.3d 1331, 1333 (Fed. Cir.2000) ("The 'relied on' language ordinarily means that the issue of validity or interpretation was a part of the court's decision as indicated by its written opinion.").

In this case, the court implicitly relied on 38 U.S.C. § 5107(b) for its interpretation of the benefit of the doubt rule:

Finally, the appellant argues that the Board failed to resolve reasonable doubt in her favor as required by 38 C.F.R. § 3.102 (1997) [the DVA regulation embodying the benefit of the doubt rule]. However, twice in its decision the Board recognized that "in light of the benefit of the doubt rule, the preponderance of the evidence must be against the claim for benefits to be denied." ... Nonetheless, the Board concluded that the preponderance of the evidence was against the claim. Accordingly, the Board did not fail to consider the benefit of the doubt rule in the appellant's case.

*Forshey,* 12 Vet.App. at 76 (citations omitted). As that court has recognized in recounting the legislative history of 38 U.S.C. § 5107(b), the concept embodied in the department's regulation originated before enactment of the statute, but "what controls now is not the language of prior regulations but the statutory standard of [§ 5107(b)]." *Gilbert v. Derwinski,* 1 Vet. App. 49, 55 (1990). Thus, by affirming the decision, after explicitly considering and rejecting Forshey's argument about the board's benefit of the doubt ruling, the Veterans Court must be deemed to have relied on the contested statute.

██ The government also argues that we should decline to consider Forshey's challenge to the interpretation of this statute because the issue was not raised below. We generally refrain from examining questions not raised below, but under certain circumstances it is appropriate. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Among the reasons for choosing this course are that the issue is one of pure law; the proper

---

2. 38 U.S.C. § 5107(b) provides:

When, after consideration of all evidence and material of record in a case before the Department with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. Nothing in this subsection shall be construed as shifting from the claimant to the Secretary the burden specified in subsection (a) of this section.

resolution is beyond all doubt; there was no opportunity to raise the objection below; it is a significant question of general impact or public concern; or it is in the interest of substantial justice. *See L.E.A. Dynatech, Inc. v. Allina,* 49 F.3d 1527, 1531 (Fed.Cir.1995). Of signal importance here, however, is the greater latitude accorded claimants in informal and nonadversarial proceedings. *See Sims v. Apfel,* —— U.S. ——, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

*Sims* held that a judicially-imposed requirement of issue exhaustion is inappropriate in the social security context because the parties have a nonadversarial relationship. "It is true that we have imposed an issue-exhaustion requirement even in the absence of a statute or regulation. But the reason we have done so does not apply here. The basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Id.* at 2084.

"But ... the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding. Where the parties are expected to develop the issues in an adversarial administrative proceeding, it seems to us that the rationale for requiring issue exhaustion is at its greatest. Where, by contrast, an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker. More generally, we have observed that it is well settled that there are wide differences between administrative agencies and courts, and we have thus warned against reflexively assimilating the relation of .... administrative bodies and the courts to the relationship between lower and upper courts." *Id.* at 2085 (internal quotations and citations omitted).[3]

The Supreme Court's *Sims* rationale and articulation apply with equal, if not greater, force in this arena. The system for awarding veterans benefits is "imbued with special beneficence" from a sovereign grateful to a "special class of citizens, those who risked harm to serve and defend their country." *Bailey v. West,* 160 F.3d 1360, 1370 (Fed.Cir.1998). It is intended to be "a nonadversarial, ex parte, paternalistic system," that is "uniquely pro-claimant." *Collaro v. West,* 136 F.3d 1304, 1309–10 (Fed.Cir.1998). It is, in short, or at least it ought to be, the antithesis of an adversarial, formalistic dispute resolving apparatus.

The issue in our case has never been subject to review and implicates the fundamental right of due process. The importance of the standard of review requires clarification so that the parties and factfinder understand the level of evidentiary probity needed to rebut the presumption of service-connection. The issue is a purely legal one, and requires no additional factual development. Finally, the issue was before the court when Forshey impliedly raised a question of statutory interpretation by contesting the board's application of the benefit of the doubt rule.

## II.

The standard of proof applied to rebut the § 105 presumption of service-connection was derived from an interpretation of 38 U.S.C. § 5107(b) (then § 3007(b)) in *Gilbert. See* 1 Vet.App. at 54. This statute provides that when the positive and negative evidence concerning an issue material to the determination of a veteran's benefit claim is roughly in equipoise, the benefit of the doubt is to be given to the claimant. *See id.* at 55. The Court of Appeals for Veterans Claims has likened this to the rule in baseball that "the tie

---

**3.** It is true that *Sims* involved court review of agency decisions, and we are reviewing a court judgment. *See Belcher v. West,* 214 F.3d 1335, 1337 (Fed.Cir.2000). However, that is of no moment because the Veterans Court is not a fact finding body like a district court, and the administrative decision of the board, to the extent we are concerned, passes through the Veterans Court as a matter of law.

goes to the runner." *Id. Gilbert* determined that in light of § 5107(b), "the preponderance of the evidence must be against the claim for benefits to be denied." *Id.* at 54.

In our view, § 5107(b) sets out not a standard of proof, but a rule for weighing evidence material to a claim. It is operative only after a claimant produces evidence to establish his claim. In contrast, where an individual relies on a presumption, he does not yet need to offer evidentiary support. Section 5107(b) does not address the rebuttal of a presumption.

■■■ A presumption has evidentiary value, but it is not a form of evidence. *See Routen v. West,* 142 F.3d 1434, 1439 (Fed. Cir.1998). Instead, a presumption affords a party "the luxury of *not having to produce specific evidence* to establish the point at issue. When the predicate evidence is established that triggers the presumption, the further evidentiary gap is filled by the presumption. However, when the opposing party puts in proof to the contrary of that provided by the presumption, *and that proof meets the requisite level,* the presumption disappears." *Id.* at 1440 (citations omitted) (emphasis added). When such evidence overcomes the presumption, "[t]he party originally favored by the presumption is now put to his factually-supported proof. This is because the presumption does not shift the burden of persuasion, and the party on whom that burden falls must ultimately prove the point at issue...." *Id.* Once a fact is no longer presumed, a party must rely on actual evidence to establish the fact's existence. This proof is assessed in the manner required by § 5107(b), with doubt resolved in the veteran's favor.

The determination, then, of whether a presumption is rebutted does not involve a weighing of the evidence for and against the material issues in a claim in accordance with § 5107(b). Instead, the presumption is rebutted when the contrary evidence "meets the requisite level" to cast sufficient doubt on its viability. *Id.* Other statutes related to veterans' benefits have

explicitly set forth this requisite level, *see, e.g.,* 38 U.S.C. § 1154(b) ("Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary."), but § 105 is silent.

■■■ Where Congress has "not directly addressed the precise question at issue," the administering agency has authority to fill this gap, and "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In this instance, the Secretary has not filled the gap. Instead, he argues that the preponderance of the evidence standard applies based on § 5107(b). However, we believe the veterans benefits system demands a more exacting standard.

### III.

■■■ A standard of proof serves to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions." *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "[T]he minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky v. Kramer,* 455 U.S. 745, 755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Over time, three general standards have emerged: proof by a preponderance of the evidence, proof by clear and convincing evidence, and proof beyond a reasonable doubt.

The Supreme Court's discussion in *Addington v. Texas,* 441 U.S. 418, 423–25, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), provides a helpful summary of the standards of proof and their rationales. In civil suits, the preponderance of the evidence standard has been employed, allocating the risk of error almost evenly between parties

in a situation with which society is only minimally concerned. At the other end is the reasonable doubt standard, typically reserved for criminal cases. It provides the toughest standard for rebuttal of the presumption that an individual is innocent until proven guilty, reflecting the grave concern for errors that could send an innocent individual to prison. As the Court noted, "[i]n the administration of criminal justice, our society imposes almost the entire risk of error upon itself." *Id.* at 423–24, 99 S.Ct. 1804.

The clear and convincing evidence standard has been used in civil suits where "particularly important individual interests" are at stake, under circumstances where the interests are substantially more important than the "mere loss of money," or where there are accusations of "quasi-criminal wrongdoing." *Id.* Under these conditions, societal interest dictates that one side should be afforded protection from the risk of error that exceeds the limits of a preponderance standard but falls short of the exacting standard in criminal cases. *See, e.g., Markland v. Office of Personnel Management,* 140 F.3d 1031, 1035 (Fed.Cir.1998) (agency establishing rationale for reduction in force acquires presumption of good faith and lawfulness rebuttable by clear and convincing evidence); *Pennwalt Corp. v. Akzona Inc.,* 740 F.2d 1573, 1578–79 (Fed.Cir.1984) (party challenging presumptive validity of a patent must present clear and convincing evidence of invalidity).

In devising the veterans benefit system, Congress has provided many statutory advantages to lighten the burden of proving entitlement to benefits: several presumptions (including the one before us), the benefit of the doubt rule, and the duty of the Secretary to assist a claimant in developing the facts of his claim. Furthermore, the Supreme Court's mandate that any interpretive doubt about the meaning of language in a statute be resolved in the veteran's favor derives from an appreciation of the benevolent intent behind the veterans system. *See Brown v. Gardner,* 513 U.S. 115, 117, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *Jensen v. Brown,* 19 F.3d 1413, 1417 (Fed.Cir.1994).

It is apparent that a preponderance of the evidence standard does not fairly distribute the risk between a veteran and the government. Congress intends that "if *any* error occurs, it will occur in the veteran's favor." *Jensen,* 19 F.3d at 1417 (emphasis added). The government is more capable of shouldering the burden of error if an undeserving claimant prevails, than would be a deserving veteran or his survivor wrongly denied benefits. Therefore, no less than a showing of clear and convincing evidence to the contrary is sufficient to rebut the presumption of service-connection afforded a veteran under 38 U.S.C. § 105.

This conclusion fits comfortably within the statutory scheme of the veterans benefits system. The clear and convincing standard is explicitly present in other presumptive statutes. *See* 38 U.S.C. § 1154(b) (service-connection for disease or injury suffered by combat veterans must be rebutted by clear and convincing evidence); *id.* § 1111 (requiring clear and unmistakable evidence to rebut a presumption of sound condition); *see also* 38 C.F.R. § 3.306(b) (clear and unmistakable evidence necessary to rebut a presumption relating to service aggravation of preexisting conditions).

### Conclusion

Accordingly, the judgment of the Court of Appeals for Veterans Claims is vacated, and the case is remanded for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

SCHALL, Circuit Judge, dissenting.

Because I believe that we lack jurisdiction to consider Ms. Forshey's argument that 38 C.F.R. § 3.301(c)(2) is invalid for failing to set forth the burden of proof required to rebut the presumption of service-connection, I respectfully dissent.

## I.

The Board of Veterans' Appeals denied Ms. Forshey's claim for dependency and indemnity compensation after determining that the fatal injuries suffered by Mr. Forshey while he was on active duty were the result of his own willful misconduct. *See* 38 U.S.C. § 105(a) (stating that an injury "will be deemed to have been incurred in line of duty" unless the injury "was a result of the person's own willful misconduct"). The Board applied the benefit of the doubt rule set forth in 38 U.S.C. § 5107(b) during its analysis, stating that the preponderance of the evidence must be against the claim before benefits can be denied. The Board considered the evidence of record, and concluded that the preponderance of the evidence demonstrated that alcohol was the proximate cause of Mr. Forshey's death, and that his death was therefore the result of his own willful misconduct.

Ms. Forshey appealed the Board's decision to the United States Court of Appeals for Veterans Claims ("CAVC"). Ms. Forshey argued on appeal that there was no plausible basis for the Board's decision that alcohol was the proximate cause of Mr. Forshey's death. Ms. Forshey did not argue that 38 C.F.R. § 3.301(c)(2) is invalid, and she did not challenge the Board's application of the benefit of the doubt rule or the preponderance of the evidence standard. In fact, Ms. Forshey embraced the benefit of the doubt rule, arguing that "the evidence in favor of Appellant's claims would allow the Board to apply the benefit of the doubt doctrine in favor of the Appellant." She also endorsed the preponderance of the evidence standard, arguing that "[t]he ... [Board] admits that it must be established by a preponderance of the evidence that the consumption of alcohol was the proximate cause of the Veteran's death." The CAVC addressed Ms. Forshey's arguments, finding that the evidence of record provided a plausible basis for the Board's opinion, and determining that the Board indeed had applied the benefit of the doubt rule, but had determined that the preponderance of the evi-

dence was against her claim. *See Forshey v. West,* 12 Vet.App. 71, 76 (1998). In my view, under these circumstances, we lack jurisdiction to consider Ms. Forshey's argument that 38 C.F.R. § 3.301(c)(2) is invalid.

## II.

We recently have considered the circumstances under which our jurisdictional statute, 38 U.S.C. § 7292(a), permits us to consider a legal issue or argument presented in an appeal from the CAVC. *See Belcher v. West,* 214 F.3d 1335 (Fed.Cir. 2000); *Smith v. West,* 214 F.3d 1331 (Fed. Cir.2000). As set forth in *Belcher,* one of two conditions must be met before we can address an issue raised on appeal: (1) the issue or argument must have been raised by a party before the CAVC or (2) the CAVC must have addressed the issue or argument. *See Belcher,* 214 F.3d at 1337; *see also Smith,* 214 F.3d at 1333 (determining that if an issue of validity or interpretation was not raised before the CAVC, 38 U.S.C. § 7292(a) gives us jurisdiction to review it only if it was "relied on" by the CAVC). *Belcher* determined that these conditions were not inconsistent with the Supreme Court's decision in *Sims v. Apfel,* —— U.S. ——, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), because that decision addressed a situation where there was no statute or regulation on point, whereas our jurisdiction over appeals from the CAVC is governed by 38 U.S.C. § 7292(a). *See Belcher,* 214 F.3d at 1337. *Belcher* also noted that *Sims* involved a court's review of an agency decision, whereas when we review a CAVC decision, we are reviewing the decision of another court. *See id.*

As set forth above, Ms. Forshey did not raise before the CAVC the issues she raises on appeal, and the CAVC, understandably, did not address the issues in its opinion. Although the majority is of the view that the CAVC implicitly relied on the benefit of the doubt rule set forth in 38 U.S.C. § 5107(b), I do not believe that the CAVC's discussion of that statute gives us

jurisdiction over the issues newly raised on appeal. As set forth in *Smith*, the CAVC can be said to have "relied on" the validity or interpretation of a statute or regulation when "the issue of validity or interpretation was part of the court's decision as indicated by its written opinion." *Id.* The CAVC's opinion in this case does not discuss the validity of 38 C.F.R. § 3.301(c)(2) and does not interpret the regulation or 38 U.S.C. § 5107(b). The CAVC's discussion of the benefit of the doubt rule responds to Ms. Forshey's argument that the Board had failed to apply that rule, *see Forshey*, 12 Vet.App. at 76, and does not consider whether the rule applies in the context of rebutting the presumption of service-connection under 38 C.F.R. § 3.301(c)(2). Because Ms. Forshey did not challenge the validity of 38 C.F.R. § 3.301(c)(2) or the applicability of the benefit of the doubt rule before the CAVC, and because the CAVC's opinion does not discuss either issue, it cannot fairly be said that the CAVC "relied on" the validity of 38 C.F.R. § 3.301(c)(2) or the interpretations of 38 C.F.R. § 3.301(c)(2) and 38 U.S.C. § 5107(b) that Ms. Forshey challenges before this court. To reach a different conclusion would give this court jurisdiction over arguments challenging the validity or interpretation of any statute or regulation mentioned in a CAVC opinion or inherent to a CAVC decision, regardless of whether the arguments were presented to or considered by the CAVC. In my view, our jurisdictional statute, as interpreted by *Belcher* and *Smith*, does not permit such plenary review of CAVC decisions. Thus, I do not believe that we have jurisdiction over Ms. Forshey's challenge to the validity of 38 C.F.R. § 3.301(c)(2).

Even absent the jurisdictional impediment, I would be disinclined for prudential reasons to consider the issues raised by Ms. Forshey because they were not raised before the CAVC. We generally benefit from the thinking of the CAVC, which is thoroughly familiar with the veterans statutes and regulations. *See Smith*, 214 F.3d at 1333. If we decide an issue for the first time on appeal, however, we must do so without knowing the CAVC's opinion on the issue. Moreover, when we agree to consider an issue newly raised on appeal, the other party may be surprised to its detriment, and the record may not contain all evidence considered by the parties to be relevant to the issue. *See id.* These considerations have even more weight when the party raising the new issue on appeal took inconsistent or contrary positions before the CAVC, as Ms. Forshey did here.