﻿Citation Nr: AXXXXXXXX
Decision Date: 12/30/19 Archive Date: 12/30/19

DOCKET NO. 190517-5391
DATE: December 30, 2019

ORDER

The claim of entitlement to service connection for posttraumatic stress disorder (PTSD) is denied.

The claim of entitlement to service connection for prostate cancer, to include as due to exposure to herbicidal agents is denied.

The claim of entitlement to service connection for multiple myeloma, include as due to exposure to herbicidal agents is denied.

FINDINGS OF FACT

1. The Veteran does not have a current diagnosis of PTSD or any other acquired psychiatric disorder that manifested during active service, within one year of his separation from active service and is not otherwise related to his active duty service.

2. The Veteran served in Thailand during 1972 on the Korat Royal Thai Air Force Base (AFB) as a medical technician.

3. The Veteran’s prostate cancer did not manifest during active service, within one year of his separation from active service, and is not otherwise related to his active duty service to include as due to exposure to herbicide agents.

4. The Veteran’s multiple myeloma did not manifest during active service, within one year of his separation from active service, and is not otherwise related to his active duty service to include as due to exposure to herbicide agents.

CONCLUSIONS OF LAW

1. The criteria for establishing entitlement to service connection for PTSD have not been met. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304, 4.125(a) (2018).

2. The criteria to establish service connection for prostate cancer have been met. 38 U.S.C. §§ 1101, 1110, 1113, 1116, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2018).

3. The criteria to establish service connection for multiple myeloma have been met. 38 U.S.C. §§ 1101, 1110, 1113, 1116, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had honorable active duty service with the United States Air Force from September 1969 to May 1973.

These matters are before the Board of Veteran’s Appeals (Board) from a January 2019 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) that denied service connection for PTSD, prostate cancer, and multiple myeloma.

Entitlement to service connection for PTSD

The Veteran contends that he is entitled to service connection for PTSD. The Veteran asserts that his time stationed in Thailand and Japan where he treated patients caused him emotional distress.

Generally, to establish service connection there must be competent evidence showing: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the in-service injury incurred or aggravated during service. 38 U.S.C. § 1110, 1131; 38 C.F.R. § 3.303.

Pursuant to the requirements of 38 C.F.R. § 3.304(f), a claim for service connection for PTSD requires: (1) a diagnosis that conforms to the requirements of 38 C.F.R. § 4.125 (a); (2) a medical link between the diagnosis and an in-service stressor; and (3) credible supporting evidence of the occurrence of the in-service stressor. The requirements of 38 C.F.R. § 4.125 (a) indicate that the diagnosis of a mental disorder must conform to the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition (DSM-5).

Effective March 19, 2015, the VA replaced outdated psychiatric references with references to the DSM-5. The Secretary specifically noted that it did not intend for the provisions to apply to claims that were pending before the Board (claims already certified to the Board on appeal) on or before August 4, 2014. See 80 Fed. Reg. 14308 (March 19, 2015). As the current case was certified to the Board in May 2019, which is after August 4, 2014, and any examination would require the use of the DSM-5. See 38 C.F.R. § 4.125 (a).

The Secretary shall consider all information and lay and medical evidence of record in a case and make appropriate determinations as to competence, credibility, and weight. 38 U.S.C. § 5107; 38 C.F.R. § 3.303; Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (2018).

When there is an approximate balance between positive and negative evidence the benefit of the doubt doctrine must apply in favor of the Veteran. But when the preponderance of the evidence weighs against the claims of the Veteran the claim will be denied on its merits. In those cases, the benefit of the doubt doctrine is inapplicable. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran has not met the first element of service connection which requires a current diagnosis for PTSD under the DSM-5. The Veteran does not have a current diagnosis for PTSD and does not have a diagnosis of any mental health disorder under the DSM-5. Without proof of a present disability there can be no claim; regardless of injuries or diseases sustained in active service. See Brammer v. Derwinksi, 3 Vet. App. 223 (1992).

The Veteran’s service treatment records are silent as to any indications of a psychiatric disorder. The Veteran’s entry examinations in July 1969 indicated that he had no issues and was in good health. However, the Veteran’s exit examination in March 1973 indicated that he had issues with sleeping and nervous trouble. The Veteran’s service treatment records indicated that he attended group therapy for his “nervous trouble” in January 1970 and was referred to therapy due to complaints of nervousness due to conflicts with his father. The Veteran was noted to attend therapy until mid-February 1970. However, the Veteran’s service treatment records had no indication of a diagnosis of PTSD. The Board notes that the Veteran’s therapy occurred before he was stationed in Thailand and Japan.

There is no indication that the Veteran suffered an event, injury, or disease in service; or has a presumptive disease or symptoms of such a disease manifesting during an applicable presumptive period. The Veteran’s claims to the contrary are conclusory generalized statements which are insufficient to trigger VA’s duty to provide examinations. Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (holding that a veteran’s mere conclusory generalized lay statement that a service event or illness caused the claimant’s current condition is insufficient to require the Secretary to provide a VA examination). Absent any indication that the Veteran suffered an event, injury, or disease in service or exhibited symptoms of a presumptive disease within one year of discharge from active duty; or during an applicable presumptive period; or any indication that the claimed PTSD is associated with service or a service-connected disability, the Board finds that an examination is not necessary.

The Veteran does not have competent medical evidence connecting PTSD and his active duty service. The Veteran has not submitted evidence of a current disability for VA purposes and the Veteran has provided no additional evidence to suggest that he now suffers from PTSD, or any psychiatric disorder. The Veteran’s record has no treatment records. 

The Board recognizes that the Veteran believes that he has PTSD related to his active duty service. However, there is no evidence of record that the Veteran has the requisite training or expertise to provide a nexus opinion regarding this issue. Therefore, it is outside the competence of the Veteran. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); see also Kahana v. Shinseki, 24. Vet. App. 428 (2011).

There must be a current diagnosis of a disorder for service connection to be granted. Hickson v. West, 12 Vet. App. 247, 252 (1999). Without a medical diagnosis of PTSD, the Board must deny the Veteran’s claim. See Degmetich v. Brown, 104 F.3d 1328, 1333 (1997) (holding that the existence of a current disability is the cornerstone of a claim for VA disability compensation). Since the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107(b) regarding reasonable doubt are not applicable.

The claim of entitlement to service connection for PTSD must be denied.

Exposure to Agent Orange in Thailand

Veterans who served in the Republic of Vietnam during the Vietnam era are presumed to have been exposed to certain herbicide agents (e.g., Agent Orange). 38 U.S.C. § 1116; 38 C.F.R. § 3.307. In the case of such a veteran, service connection for certain diseases will be presumed if they become manifest to a degree of 10 percent or more at any time after service. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307, 3.309.

While all Veterans who served in the Republic of Vietnam, during the Vietnam Era are presumed to have been exposed to herbicide agents, the Veteran's service personnel records do not show that he served in Vietnam, nor does he claim that he did. Instead, the Veteran claims exposure to herbicide agents while stationed in Thailand.

VA procedures for verifying exposure to herbicide agents in Thailand during the Vietnam Era are detailed in the VBA Adjudication Manual, M21-1, IV.ii.2.C. VA has determined that there was significant use of herbicide agents on the fenced-in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes as evidenced in a declassified Vietnam era Department of Defense document titled "Project CHECO Southeast Asia Report: Base Defense in Thailand." Special consideration of herbicide agent exposure on a facts-found or direct basis should be extended to those Veterans whose duties placed them on or near the perimeters of Thailand military bases. This allows for presumptive service connection of the diseases associated with herbicide agent exposure.

The majority of troops in Thailand during the Vietnam Era were stationed at the Royal Thai Air Force Bases of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, and Don Muang. If a veteran served on one of these air bases as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by MOS (military occupational specialty), performance evaluations, or other credible evidence, then herbicide exposure should be acknowledged on a facts-found or direct basis. However, this applies only during the Vietnam Era, from February 28, 1961, to May 7, 1975. See M21-1, M21-1, IV.ii.1.H.5.b.

In adjudicating these claims, the Board must assess the competence and credibility of the Veteran. Washington v. Nicholson, 19 Vet. App. 362 (2005). Lay testimony is competent to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (lay person competent to testify to pain and visible flatness of his feet).

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded to the claimant.

Certain chronic diseases, including prostate cancer and multiple myeloma may be presumed to have been incurred in or aggravated by service if manifested to a compensable degree within one year of discharge from service. See 38 U.S.C. §§ 1101, 1112 (2012); 38 C.F.R. §§ 3.307, 3.309. To show chronicity there is a requirement of a combination of manifestations sufficient to identify a disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “chronic”. 38 C.F.R. § 3.303(b). In these types of cases the disease is presumed under the law to have had its onset during service even though there is no evidence of that disease during service. 38 C.F.R. § 3.307(a). This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. § 1113 (2012); 38 C.F.R. §§ 3.307(d), 3.309(a).

Pursuant to 38 C.F.R. § 3.309(a) if a disease is not shown to be chronic during service or the one-year presumptive period, then service connection may also be established by showing a continuity of symptomatology after service. 38 C.F.R. § 3.303(b). Continuity of symptomatology may be established by demonstrating: (1) that a condition is shown in service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Id.

However, to use continuity of symptoms to establish a direct service connection is limited only to those disease listed under 38 C.F.R. § 3.309(a) and does not apply to other disabilities.

Nevertheless, when service connection cannot be granted on a presumptive basis, the Veteran may still establish service connection on a direct basis. See Combee v. Brown, 34 F.3d 1039,1042 (Fed. Cir. 1994).

Entitlement to service connection for prostate cancer, to include as due to exposure to herbicide agents

Entitlement to service connection for multiple myeloma, include as due to exposure to herbicide agents

The Veteran contends that he is entitled to service connection for prostate cancer and multiple myeloma to include as due to exposure to herbicidal agents. Specifically, the Veteran contends that he was exposed to Agent Orange while stationed in Korat, Air Force Base (AFB) in Thailand. He indicates that he was exposed to Agent Orange by treating patients who had come from the perimeter while working in the medical lab at Korat AFB.

In review of the Veteran’s service treatment records and military personnel records the Board notes that the Veteran’s MOS was as a medical lab specialist and medical lab assistant and was not any of the MOS’s indicated by VA to have served near the air base perimeter, had no performance evaluations indicating he served along the perimeter, and no other credible evidence that herbicide exposure should be acknowledged on a facts-found or direct basis. See DD-214 Form.

The Veteran submitted statements indicating that he treated patients, while serving at Korat AFB, who had immediately come from serving on the perimeter and he had direct exposure to service members from the perimeter.

The Veteran received a VA examination in November 2018 for prostate cancer and multiple myeloma. The prostate cancer VA examiner noted the Veteran’s diagnosis of prostate adenocarcinoma as of June 2018. The examiner noted that there are no treatment records for the Veteran’s prostate cancer with no surgery or treatment recommended currently. 

The VA examination in November 2018 for hematologic and lymphatic conditions noted the Veteran’s diagnosis of multiple myeloma as of June 2018. The examiner noted that the Veteran’s lay statements were that he believed in 1972 while stationed for 3 months in Korat AFB and Japan he worked as a medical technologist and his contact with patients resulted in Agent Orange exposure and therefore, he should have service connection granted. The Veteran also reported not having served on the perimeter of Korat AFB. The examiner noted that Agent Orange exposure had not been conceded by the RO and also noted that there were no treatment records submitted.

For both examinations above the examiner opined that the Veteran’s prostate cancer and multiple myeloma were less likely than not incurred in or caused by the claimed in-service injury or event. The examiner concluded that no herbicide exposure can be stated by the examiner without resorting to speculation, and therefore claimed conditions cannot be linked to herbicide exposure. The examiner further found that they did not have the authority to grant such presumptive exposure, which is determined by Congress. Additionally, the examiner found that if they were to concede to the Veteran’s argument then this would logically need to be extended to all personnel on the base, regardless of duties, to include supply clerks, laundry, cooks, etc. as they would all be at equal risk. The examiner noted that ideally the RO should have either conceded exposure or administratively adjudicated the case based on the Veteran’s service records and tour of duty.

The Board finds the VA examination to be competent, credible, and with significant probative weight.

The Veteran believes his prostate cancer and multiple myeloma are because of his treatment of patients coming from the perimeter of Korat AFB, which he believed in turn exposed him to Agent Orange enough to cause his prostate cancer and multiple myeloma, but he is not competent to provide a nexus opinion regarding these issues. The issues are medically complex, as it requires knowledge of the interaction between multiple organ systems in the body and interpretation of complicated diagnostic medical testing. The Board does note the Veteran has training in the medical field, however the record does not show that he has the medical training or credentials to make such a determination. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); see also Kahana v. Shinseki, 24. Vet. App. 428 (2011). The Veteran has not submitted any competent medical evidence to support his argument. Consequently, the Board gives more probative weight to the competent, probative medical evidence of record denying an etiological relationship.

In light of the above evidence the Board finds the Veteran does not meet the requirements to be presumed to have been exposed to herbicide agents. The Veteran has also not shown any continuity of symptoms, nor chronicity of the manifestation of prostate cancer and multiple myeloma that did not develop within the presumptive period since service. Therefore, presumptive service connection is not warranted under 38 C.F.R. §§ 3.307, 3.309. Failure to establish service connection on a presumptive basis does not prevent establishing service connection on another basis. See Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994).

The Board does not dispute that the Veteran has current diagnoses of prostate cancer and multiple myeloma.

When considering whether to grant a claim for direct service connection, the Board may take into consideration the passage of a lengthy period of time in which the Veteran did not complain of the disorder at issue. See Maxson v. West, 12 Vet. App. 453, 459 (1999), aff’d sub nom. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000); see also Forshey v. West, 12 Vet. App. 71, 74 (1998), aff’d sub nom. Forshey v. Principi, 284 F.3d 1335, 1358 (Fed. Cir. 2002) (the definition of evidence encompasses “negative evidence” which tends to disprove the existence of an alleged fact, i.e., the lack of evidence is itself evidence).

The Board finds that the lack of competent medical evidence of a current disability that was due to or the result of active duty service carries significant probative weight. Since, the Veteran’s record is completely silent as to any causal relationship this absence is the determining factor in the Veteran’s claims for service connection. See Forshey v. Principi, 284 F.3d 1335, 1358 (Fed. Cir. 2002) (finding that the definition of evidence encompasses “negative evidence” which tends to disprove the existence of an alleged fact, i.e., the lack of evidence is itself evidence). In this case, the absence of any medical evidence of treatment for prostate cancer or multiple myeloma for more than four decades after service also tends to establish that the Veteran’s prostate cancer and multiple myeloma were not due to or the result of his military service.

In sum, the weight of the evidence is against the Veteran’s claims for service connection, to include as due to herbicide exposure. 38 C.F.R. §§ 3.102, 3.307(a)(6), 3.309(e), 3.310(a). Therefore, service connection is not warranted for prostate cancer and multiple myeloma and the Veteran’s claims for service connection are denied.

 

 

B. MULLINS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C.A. Teich, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.