Citation Nr: 1132121 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 03-01 662 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Whether new and material evidence has been received sufficient to reopen a claim for entitlement to service connection for hypertension. 

2. Entitlement to service connection for hypertension.

3. Entitlement to an initial compensable rating for recurrent epistaxis. 

4. Entitlement to an initial rating, in excess of 10 percent, for bilateral foot callus condition. 


REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, Attorney




WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

C. Bruce, Associate Counsel


INTRODUCTION

The Veteran had active military service from November 1978 to March 1979.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from October 2002 and April 2009 rating determinations of a Regional Office (RO) of the Department of Veterans Affairs (VA) in Detroit, Michigan. The October 2003 rating determination denied reopening the Veteran's claim for entitlement to service connection for hypertension, entitlement to service connection for a bilateral foot callus condition, and entitlement to service connection for recurrent epistaxis. The Veteran appealed the denial of his claims. In a January 2006 decision the Board denied reopening the Veteran's claims. The Veteran appealed this determination to the United States Court of Appeals for Veterans Claims (Court). The Court in June 2007 and pursuant to a Joint Motion for Remand (Joint Motion) filed by the parties, vacated the Board's January 2006 decision and remanded the case to the Board for action consistent with the Joint Motion, specifically, to afford proper notice to the Veteran with regard to the information necessary to reopen his claims. As such, the Board remanded the issues in February 2008 for issuance of such notice. Subsequently, in an April 2009 rating determination, the Veteran was granted service connection for bilateral foot callus condition at a 10 percent rating and service connection for recurrent epistaxis at a noncompensable rating, both effective from March 23, 2000. The Veteran appealed the ratings assigned these disabilities. The issue of whether new and material evidence has been received to reopen a claim for entitlement to service connection for hypertension remained denied.

As noted, the above referenced claims were previously before the Board in February 2008, at which time the claims were remanded for further evidentiary development. As will be further explained below, this development having been achieved, the issues of whether new and material evidence has been received to reopen the Veteran's claim for entitlement to service connection for hypertension and entitlement to an initial compensable rating for recurrent epistaxis are now ready for appellate review.

The issue of entitlement to an initial rating, in excess of 10 percent, for bilateral foot callus condition is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. A December 1983 RO decision denied the Veteran's claim for entitlement to service connection for hypertension. The Veteran was notified of his appellate rights, but did not appeal the decision.

2. Evidence associated with the claims file after the last final denial in December 1983 is new evidence, and when considered with the previous evidence of record, relates to an unestablished fact necessary to substantiate the Veteran's claim.

3. The competent and credible evidence fails to demonstrate that the Veteran has hypertension that is related to his active duty service.

4. The Veteran's recurrent epistaxis is not manifested by greater than 50 percent obstruction of nasal passage on both sides or complete obstruction on one side and there is no evidence of polyps.



CONCLUSIONS OF LAW

1. The December 1983 RO rating decision is final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. § 20.1103 (2010).

2. New and material evidence has been received, and the claim of entitlement to service connection for hypertension, is reopened. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156(a) (2010).

3. Hypertension was not incurred or aggravated during military service nor may it be presumed to have been incurred or aggravated therein. 38 U.S.C.A. §§ 1110, 1112, 1113, 1137, 5102, 5103, 5103A, 5107(b) (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2010).

4. The criteria for an initial compensable disability evaluation for recurrent epistaxis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.102, 4.97, Diagnostic Codes 6502, 6522 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must (1) notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, (2) which information and evidence VA will obtain, (3) and which information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a) (West 2002). See also Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II). 

After careful review of the claims file, the Board finds that the letter dated in April 2008 fully satisfied the duty to notify provisions. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1) (2010); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). In this regard, this letter advised the Veteran what information and evidence was needed to substantiate the claim decided herein. This letter also requested that the Veteran provide enough information for the RO to request records from any sources of information and evidence identified by the Veteran, as well as what information and evidence would be obtained by VA, namely, records like medical records, employment records, and records from other Federal agencies.
On March 3, 2006, the United States Court of Appeals for Veterans Claims (Court) issued a decision in Dingess v. Nicholson, 19 Vet. App. 473, 484 (2006), which held that the VCAA notice must include notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. The April 2008 letter provided this notice to the Veteran. 

With respect to the Veteran's request to reopen previously disallowed claim of entitlement to service connection for hypertension, in Kent v. Nicholson, 20 Vet. App. 1 (2006), the Court held that in order to successfully reopen a previously and finally disallowed claim, the law requires the presentation of a special type of evidence-evidence that is both new and material. The terms "new" and "material" have specific, technical meanings that are not commonly known to VA claimants. Because these requirements define particular types of evidence, when providing the notice required by the VCAA it is necessary, in most cases, for VA to inform claimants seeking to reopen a previously and finally disallowed claim of the unique character of evidence that must be presented. This notice obligation, however, does not modify the requirements discussed above. See Dingess v. Nicholson, 19 Vet. App. 473 (2006). In other words, VA must notify a claimant of the evidence and information that is necessary to reopen the claim and VA must notify the claimant of the evidence and information that is necessary to establish his or her entitlement to the underlying claim for the benefit sought. The Board notes that the April 2008 letter provided this notice to the Veteran.

The Board observes that the April 2008 letter was sent to the Veteran prior to the April 2009 rating decision. As such, with respect to the issue of entitlement to an initial compensable rating for recurrent epistaxis, the VCAA notice with respect to the elements addressed in this letter was therefore timely. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). In this regard, the notice provided in the April 2008 letter fully complied with the requirements of 38 U.S.C.A. § 5103(a), 38 C.F.R. 
§ 3.159(b) (2010), and Dingess, supra. The Board observes, however, that the April 2008 letter was not sent to the Veteran prior to the October 2002 rating decision. As such, with respect to the claims for whether new and material has been received to reopen a claim for entitlement to service connection for hypertension and entitlement to service connection for hypertension, VCAA notice in accordance with Pelegrini, Kent, and Dingess, was sent after the initial adjudication of the Veteran's claims. Nevertheless, the Board finds this error nonprejudicial to the Veteran. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005). In this regard, the notice provided in the April 2008 letter fully complied with the requirements of 38 U.S.C.A. § 5103(a) (2009), 38 C.F.R. § 3.159(b) (2010), Kent and Dingess, supra, and after the notice was provided the case was readjudicated and an April 2009 supplemental statement of the case was provided to the Veteran. See Pelegrini II, supra; Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (a (supplemental) statement of the case that complies with all applicable due process and notification requirements constitutes a readjudication decision).

Therefore the Board concludes that the requirements of the notice provisions of the VCAA have been met, and there is no outstanding duty to inform the Veteran that any additional information or evidence in needed. 

The Board finds that VA has also fulfilled its duty to assist the Veteran in making reasonable efforts to identify and obtain relevant service treatment records, VA treatment records, and private treatment records in support of the Veteran's claims. In this regard, the Veteran's service treatment records and VA treatment records are associated with the claims folder. 

In February 2008, the Board remanded the case to the agency of original jurisdiction (AOJ) for additional development. A remand by the Board confers on the appellant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268 (1998). The Board notes that a remand was issued in February 2008 with instructions to the AOJ to, in accordance with Kent v. Nicholson, 20 Vet. App. 1 (2006), send the Veteran notice of the reasons why his service connection claims for hypertension, a bilateral foot callus condition, and recurrent epistaxis were previously denied, of the meaning of new and material evidence, and of the kind of evidence that would be helpful in substantiating his claim to reopen his previously-denied claims for service connection for hypertension, a bilateral foot callus condition, and recurrent epistaxis. The requested Kent notice having been provided and service connection granted for two of the disabilities that were at issue, the remaining service connection issue now returns to the Board for appellate review.

The Board recognizes a duty to provide a VA examination when the record lacks evidence to decide the Veteran's claim and there is evidence of (1) a current disability, (2) an in-service event, injury, or disease, and (3) some indication that the claimed disability may be associated with the established event, injury, or disease. 38 C.F.R. § 3.159(c)(4)(i) (2010); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006). The Board notes that there is no duty to provide an examination until after a claim has been reopened. See Paralyzed Veterans of America v. Secretary of Veterans Affairs, 345 F.3d 1334 (Fed. Cir. 2003) (holding that VA need not provide a medical examination or medical opinion until a claim is reopened). See also Woehlaert v. Nicholson, 21 Vet. App. 456 (holding that adequacy of VA medical examination mooted upon Board's determination that claimant not entitled to reopening of claim, and conduct of VA medical examination, when claimant had not presented new and material evidence.) Nevertheless, the Veteran was afforded a VA examination for his claim of hypertension in October 2008. The Veteran was also afforded a VA examination for his claim of recurrent epistaxis in October 2008. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Additionally, an examination for rating purposes should contain sufficient detail and reflect the whole recorded history of a Veteran's disability, reconciling the various reports into a consistent picture. See Schafrath v. Derwinksi, 1 Vet. App. 589, 594 (1991); 38 C.F.R. § 4.2 (2010). As noted below, the Board finds that the VA examinations obtained in this case are more than adequate, as they are predicated on a full reading of the VA medical records. They consider all of the pertinent evidence of record, and provide a complete rationale for evaluations provided, relying on and citing to the records reviewed. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c) (4) (2010).

Under the circumstances of this case, "the record has been fully developed," and "it is difficult to discern what additional guidance VA could have provided to the Veteran regarding what further evidence he should submit to substantiate his claim." Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). Furthermore, as discussed above, the Board finds that there has been substantial compliance with its February 2008 remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand). See also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). Therefore, the Board is satisfied that VA has complied with the duty to assist requirements of the VCAA and the implementing regulations and the record is ready for appellate review.

Analysis

I. New and Material

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1131 (West 2002); 38 C.F.R. 
§ 3.303(a) (2010). As a general matter, service connection for a disability on the basis of the merits of such a claim requires (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Cuevas v. Principi, 3 Vet. App. 542 (1992). That an injury occurred in service alone is not enough; there must be chronic disability resulting from that injury. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b) (2010). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. 
§ 3.303(d) (2010).

The Board notes that the Veteran currently has a claim of entitlement to service connection for hypertension. This claim is based upon the same factual basis as his original claim of entitlement to service connection for hypertension, which was denied in a December 1983 rating decision. As such, it is appropriate for the Board to consider this claim as a request to reopen the previously denied claim. See Boggs v. Peake, 520 F.3d 1330 (Fed. Cir. 2008).

Generally, an unappealed RO denial is final under 38 U.S.C.A. § 7105 (West 2002). However, the Veteran may request that VA reopen his claim upon the receipt of "new and material" evidence. 38 U.S.C.A. § 5108 (West 2002). If new and material evidence is presented or secured with respect to a claim that has been disallowed, VA must reopen the claim and review its former disposition. Id. See also Hodge v. West, 155 F.3d 1356, 1362 (Fed. Cir. 1998). According to 38 C.F.R. § 3.156(a) (2010), "new and material" evidence means existing evidence that by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. Id.

The Veteran's initial claim of entitlement to service connection for hypertension was denied by RO rating decision dated in December 1983. The evidence of record at the time of the decision included service treatment records dating from November 1978 to March 1979. The rating decision indicates that the Veteran was denied service connection for hypertension because while the Veteran did have some high blood pressure readings in service, there were no findings, diagnosis, or treatment for hypertension in service and no indication that the Veteran had been treated for hypertension post service. The Veteran did not perfect an appeal of this decision; therefore, it became final. 38 U.S.C.A. § 7105 (West 2002); 38 C.F.R. § 20.1103 (2010). 

In connection with the current appeal, the RO denied reopening the Veteran's claim in October 2002. The relevant evidence at the time of the October 2002 rating decision consisted of all the previous evidence; treatment records from Central Counties Center for MHMR dating from 1993 to 1995; treatment records from Hurley Medical Center dating from June 1998 to July 2000; and treatment records from Dr. Kowal dating from September 2000 to December 2000. Subsequent to the October 2002 denial, additional evidence was submitted including treatment records from Hurley Medical Center dating from January 1999 to May 2008; treatment records from Dr. Kowal dating from January 2006 to September 2007; VA treatment records from the Ann Arbor Medical Center dating from June 2006 to January 2009, Saginaw Medical Center dating from March 1999 to May 2001 and from August 2008 to August 2009, and Oklahoma City Medical Center dating from January 1998 to December 1998; an examination reports from Saginaw Medical Center dating October 2008; Social Security Administration records; transcripts from an October 2004 RO hearing and an April 2005 Travel Board hearing; internet research on hypertension; VA examination dated August 2009; and various statements from the Veteran and his representative. 

For claims received on or after August 29, 2001, new evidence means existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of establishing the claim. 38 C.F.R. 3.156(a). New and material evidence need not be received as to each previously unproven element of a claim in order to justify reopening thereof. See Shade v. Shinseki, 24 Vet. App. 110, 120 (2010).

The Board notes that the evidence acquired since the last rating decision is new in that it was not previously submitted to agency decisionmakers. As previously noted the Veteran's claim for entitlement to service connection for hypertension was initially denied because there was no evidence of a diagnosis for hypertension in service or any treatment for hypertension after service. The Board notes that the evidence listed above is therefore also material in that it addresses post service and current treatment for hypertension, meaning the evidence relates to an unestablished fact necessary to substantiate the claim. In particular the Board notes the October 2008 and August 2009 VA examinations which provide a current diagnosis as well as opinions with regard to nexus. The Board notes that the aforementioned evidence is neither cumulative nor redundant. With regard to whether the evidence raises a reasonable possibility of establishing the claim, the Board further notes that both the October 2008 and August 2009 VA examinations provide a negative nexus opinion with regard to whether the Veteran's hypertension is related his active duty service. However, the Board notes that in Shade, the Court stated that "the phrase 'raises a reasonable possibility of establishing the claim' must be viewed as enabling rather than precluding reopening." The Court further notes that "[t]he Board's analysis of the issue of reopening must first be confined to the subject of existence of new and material evidence alone and must not be an outcome-based decision." Shade v. Shinseki, 24 Vet. App. 110, 121 (2010).

Therefore, presuming the credibility of the evidence submitted, the evidence discussed above is considered new and material. See Justus, supra. After careful consideration, the Board concludes that this newly received evidence relates to an unestablished fact necessary to substantiate the Veteran's claim; thus, it is material. Such evidence clearly relates to the reasons for the previous denial in December 1983. As such, the Board concludes that the Veteran's request to reopen the previously disallowed claim of entitlement to service connection for hypertension should be granted. 38 C.F.R. § 3.156(a) (2010). Further, the Board has considered whether adjudicating the claim on the merits at this time would prejudice the Veteran. In this case, the Veteran has been provided with pertinent laws and regulations regarding service connection. He has been given the opportunity to review the evidence of record and submit arguments in support of his underlying service connection claim. His arguments have focused on the issue of service connection. Therefore, the Board can proceed with this claim without prejudice to the Veteran. See Sutton v. Brown, 9 Vet. App. 553 (1996); Bernard v. Brown, 4 Vet. App. 384 (1993).


II. Service Connection--Hypertension

The Veteran contends that he has hypertension due to his military service. Service connection, as noted above, is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. If a condition noted during service is not shown to be chronic, then generally a showing of continuity of symptomatology after service is required for service connection. 38 C.F.R. § 3.303(b). In addition, service connection may also be granted on the basis of a post-service initial diagnosis of a disease, where the physician relates the current condition to the period of service. 38 C.F.R. § 3.303(d). Moreover, where a Veteran served 90 days or more during a period of war and hypertension becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in or aggravated by service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

In order to establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999). The requirement of a current disability is "satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim." See McClain v. Nicholson, 21 Vet. App. 319 at 321 (2007).

The Board notes initially that the Veteran has a current diagnosis of hypertension as noted on the August 2009 VA examination. The examination report notes the following blood pressure ratings for established diagnosis of hypertension: 151/75, 145/71, 148/72. The examiner diagnosed the Veteran with hypertension-essential without specific etiology. As such the Board finds that the Veteran has a current disability as required by 38 C.F.R. § 3.303. 

With regard to in-service incurrence, the Veteran's service treatment records showed no complaints, abnormalities, or diagnosis of hypertension. Blood pressure readings in service were as follows: 124/80, 122/78, 160/94, and 142/74. In February 1979, the Veteran was seen with a two week history of epistaxis. The assessment was, in pertinent part, to rule out hypertension. A blood pressure series and ENT consultation were recommended. On a dental history report in March 1979, the Veteran denied any history of a heart condition but reported that he had high blood pressure. However, aside from the aforementioned blood pressure readings there are no other readings of high blood pressure while in service and no diagnosis of hypertension. As such the Board notes that there is no evidence that the Veteran was diagnosed with hypertension while on active duty. Therefore, entitlement to service connection for hypertension based on in-service incurrence must be denied despite the fact that the Veteran had documented high blood pressure while on active duty. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(a).

Post service records showed no complaints, treatment, abnormalities, or diagnosis of hypertension until 1988. The records showed that the Veteran underwent several surgeries on his left knee in 1982 and 1983, and was evaluated for psychiatric problems on numerous occasions since 1977 without a single mention of any heart problems or hypertension. Indeed multiple medical records dated in the mid 1980s show consistently normal blood pressures in the 120/80 range. A private psychiatric evaluation report in November 1986 indicated that there was no evidence of any heart problems. The Veteran made no mention of any heart problems or hypertension on claims for disability with the Social Security Administration in 1986 or 1987. In connection with a disability claim in May 1988, the Veteran reported that he was started on hypertension medication in April 1988.

The Veteran's testimony at the October 2004 RO hearing and the June 2005 Travel Board hearing was essentially the same. He testified that he was treated for and diagnosed with hypertension in service and was treated by VA beginning about six months after his discharge from service up to the present time, however there is no objective medical evidence of record that the Veteran was treated for hypertension before 1988.
 
As to post-service continuity of symptomatology under 38 C.F.R. § 3.303(b), the Board finds that the length of time between his separation from active duty in 1979 and the first diagnosis of hypertension starting almost nine years after service in 1988 weighs heavily against his claim. Put another way, the almost nine year gap between the Veteran's discharge from active duty and the first diagnosis of hypertension weighs heavily against his claim. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd., 230 F.3d 1330 (Fed. Cir. 2000) (service incurrence may be rebutted by the absence of medical treatment for the claimed condition for many years after service); Forshey v. West, 12 Vet. App. 71, 74 (1998), aff'd sub nom. Forshey v. Principi, 284 F.3d 1335, 1358 (Fed. Cir. 2002) (noting that the definition of evidence encompasses "negative evidence" which tends to disprove the existence of an alleged fact); Mense v. Derwinski, 1 Vet. App. 354, 356 (1991) (holding that VA did not err in denying service connection when the Veteran failed to provide evidence which demonstrated continuity of symptomatology, and failed to account for the lengthy time period for which there is no clinical documentation of his low back condition); Shaw v. Principi, 3 Vet. App. 365 (1992) (a Veteran's delay in asserting a claim can constitute negative evidence that weighs against the claim).

Additionally, with regard to service connection based on the documentation of the disability after service under 38 C.F.R. § 3.303(d), the Board notes that the post-service record is negative for a medical opinion linking the Veteran's current hypertension to his military service. See 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303(d); Rabideau v. Derwinski, 2 Vet. App. 141 (1992) (establishing service connection requires finding a relationship between a current disability and events in service or an injury or disease incurred therein). In this regard, the Board notes the August 2009 VA examination report in which the examiner opined that the Veteran's hypertension is not caused by or the result of the Veteran's active military service because the Veteran's in-service elevated blood pressure readings were not early manifestations of the Veteran's current hypertension especially given numerous normal blood pressure readings subsequent to the Veteran's active duty service.

Additionally, service connection is generally warranted only if there is competent evidence of a causal relationship between any present disability and service. See Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); 38 C.F.R. § 3.303(d). The Board acknowledges that lay evidence may be sufficient to establish a causal relationship between a current disability and service. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Specifically, lay assertions may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). In weighing lay evidence, the Board must render a finding with regard to both competency and credibility. See Coburn v. Nicholson, 19 Vet. App. 427, 433 (2006). Competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence. Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value.

As to the Veteran's claims that his hypertension was caused by his military service, laypersons are generally not capable of opining on matters requiring medical knowledge. Routen v. Brown, 10 Vet. App. 183, 186 (1997); see also Bostain v. West, 11 Vet. App. 124, 127 (1998); citing Espiritu v. Derwinski, 2 Vet. App. 492 (1992) (a layperson without the appropriate medical training and expertise is not competent to provide a probative opinion on a medical matter, to include a diagnosis of a specific disability and a determination of the origins of a specific disorder). Lay testimony is competent, however, to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." Layno v. Brown, 6 Vet. App. 465, 469 (1994); Charles v. Principi, 16 Vet. App. 370 (2002).

As noted above, the Veteran is competent to give evidence about what he sees and feels. See Davidson, supra; Buchanan, supra; Jandreau, supra; Charles, supra. However, as a lay person, the Veteran is not competent to provide evidence as to complex medical questions. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). Therefore, his opinion is not competent with regard to an assessment as to etiology. Moreover, the Board finds that the lay statements as to a nexus are outweighed by the medical evidence of record which is negative for a diagnosis of hypertension for almost nine years after the Veteran's separation from military service.

Therefore, the Board also finds that service connection for hypertension is not warranted based on the initial documentation of the disability after service because the weight of the competent and credible medical evidence is against finding a causal association or link between the post-service disorder and an established injury, disease, or event of service origin. See 38 U.S.C.A. § 1131; 38 C.F.R. 
§ 3.303(d); Rabideau, supra.

Lastly, the Board finds that the presumptions found at 38 C.F.R. §§ 3.307 and 3.309 do not help the Veteran in establishing his claim because the record does not show the Veteran being diagnosed with hypertension in the first post-service year.

In reaching the above conclusion, the Board also considered the doctrine of reasonable doubt. 38 U.S.C.A. § 5107(b). However, as the preponderance of the evidence is against the claim, the doctrine is not for application. See also, e.g., Ortiz v. Principi, 274 F. 3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

III. Increased Rating--Epistaxis

In Fenderson v. West, 12 Vet. App. 119 (1999), the Court held that evidence to be considered in the appeal of an initial assignment of a rating disability was not limited to that reflecting the then-current severity of the disorder. As such, the Board has considered all evidence of record in evaluating the Veteran's epistaxis. Also, in Fenderson, the Court discussed the concept of the "staging" of ratings, finding that in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a Veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Fenderson at 126-28. As such, in accordance with Fenderson, the Board has considered the propriety of assigning initial staged ratings for the Veteran's service- connected epistaxis. See also, Hart v. Mansfield, 21 Vet. App. 505 (2007)

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2010). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2010). In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2010). Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of any disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2010).

In a claim for a greater original rating after an initial award of service connection, all of the evidence submitted in support of the Veteran's claim is to be considered. In initial rating cases, as noted above, separate ratings can be assigned for separate periods of time based on the facts found, i.e., "staged" ratings. Fenderson v. West, supra; 38 C.F.R. § 4.2 (2010). For reasons discussed in more detail below, the Board finds that the competent evidence demonstrates that the Veteran's service-connected disability did not undergo an increase in severity sufficient to warrant a staged rating during the relevant appeal period. As such, the Board will discuss the Veteran's epistaxis symptomatology in relation to the applicable rating criteria for the entire appeal period.

The Board notes initially, that pyramiding, that is the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when evaluating a Veteran's service-connected disability. 38 C.F.R. § 4.14 (2010). However, it is possible for a Veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; the critical element in permitting the assignment of several evaluations under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261- 62 (1994).

Under the General Rating Formula for Diseases of the Nose and Throat, section 38 C.F.R.§ 4.97 of the Rating Schedule, the Board notes that there is no specific diagnostic code addressing epistaxis. The Veteran contends that he is entitled to a higher initial disability rating for service-connected epistaxis (claimed as recurrent nosebleeds). Such disability is currently rated as noncompensable under 38 C.F.R. § 4.97, Diagnostic Code 6599-6522. See 38 C.F.R. § 4.27 (2010) (hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned, the additional code is shown after the hyphen; unlisted disabilities requiring rating by analogy will be coded first by the numbers of the most closely related body part and then "99").

Under Diagnostic Code 6522, a 10 percent evaluation is assigned for allergic or vasomotor rhinitis without polyps, but with greater than 50-percent obstruction of nasal passage on both sides or complete obstruction on one side. 38 C.F.R. § 4.97, Diagnostic Code 6522 (2010). A maximum 30 percent evaluation is assigned for allergic or vasomotor rhinitis with polyps. Id. 

Alternatively, the Veteran can also be rated under Diagnostic Code 6502, for traumatic deviation of a nasal septum, which provides a 10 percent rating when there is a 50 percent obstruction of the nasal passage on both sides or complete obstruction of one side. See 38 C.F.R. § 4.97, Diagnostic Code 6502 (2010).

The Board notes that none of the other Diagnostic Codes contained within the Diseases of the Nose and Throat section of 38 C.F.R.§ 4.97 of the Rating Schedule are applicable because the Veteran does not have loss or scarring of his nose (6504); sinusitis (6510-14); laryngitis (6515-16); aphonia (6518-19); injuries to his larynx (6520) or pharynx (6521); or rhinitis, bacterial (6523) or granulomatous (6524), as will be shown below.

The Veteran was afforded a VA examination for his epistaxis in October 2008. At that time, the Veteran reported that the onset of nosebleeds was in service and that he continued to experience recurrent nosebleeds after service. He stated that he stopped the nosebleeds by either sometimes packing his nose or by putting his head back and pinching his nose. The course of the disability since the onset was described as intermittent with remissions. No current treatment was reported. Upon examination it was noted that the Veteran does not have a history of trauma to the nose, neoplasm, nasal allergy, osteomyelitis, sinusitis or rhinitis. There was no evidence of active sinus disease or nasal obstruction. Specifically there was no evidence of polyps, septal deviation, permanent hypertrophy of turbinates from bacterial rhinitis, rhinoscleroma, tissue loss, scarring, deformity of the nose, granulomatosis or granulomatous infection. Additionally it was noted that the Veteran had not had a laryngectomy and there were no residuals of any injury to the pharynx, including nasopharynx. An x-ray of the nose revealed no acute bony abnormality. A CT scan of the paranasal sinuses revealed a mild nasoseptal deviation, but no nasal masses were seen. 

Given the evidence of record, the Board finds that a noncompensable evaluation is applicable in this case. The Veteran's nostrils are not completely obstructed, nor is there any evidence of at least 50 percent obstruction of both sides of his nasal passage. Additionally, there are no polyps shown on examination as would be required by Diagnostic Code 6522 in addition to greater than 50 percent obstruction of the both sides of his nasal passage in order for a compensable evaluation. The evidence did not indicate the existence of any sinusitis, laryngitis, aphonia, injuries to the larynx or pharynx, or any bacterial or granulomatous rhinitis.

Since the Veteran does not meet the minimum compensable rating under either potentially applicable Diagnostic Code 6502 or 6522 for his service-connected nasal disability, an initial noncompensable evaluation was properly assigned and an increased evaluation must be denied. See 38 C.F.R. § 4.97, Diagnostic Codes 6502, 6522. 

Finally, in Thun v. Peake, 22 Vet. App. 111, 115 (2008), the Court held that the determination of whether a Veteran is entitled to an extraschedular rating under 38 C.F.R. § 3.321(b) is a three-step inquiry, beginning with a threshold finding that the evidence before VA "presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." In other words, the Board must compare the level of severity and symptomatology of the Veteran's disability with the established criteria found in the rating schedule for that disability; if the criteria reasonably describe the Veteran's disability level and symptomatology, then his disability picture is contemplated by the rating schedule. Id.

The Board notes that there is no probative evidence of record that the Veteran's epistaxis warrants a compensable disability rating on an extraschedular basis. 38 C.F.R. § 3.321(b) (2010). Any limits on the Veteran's employability due to his disability have been contemplated in the assigned noncompensable rating under Diagnostic Code 6522. The evidence also does not reflect that the Veteran's disability has necessitated any frequent periods of hospitalization or caused marked interference with employment. Indeed, the examiner in the October 2008 VA examination noted that the Veteran's epistaxis had no significant effects on the Veteran's usual occupation. Furthermore, the record does not show an exceptional or unusual disability picture not contemplated by the regular schedular standards that would warrant the assignment of an extraschedular rating. Since application of the regular schedular standards is not rendered impracticable in this case because his disability picture for this disability is contemplated by the Rating Schedule, the Board is not required to refer this matter to the RO for the procedural actions outlined in 38 C.F.R. § 3.321(b)(1) (2010) for consideration of the assignment of an extraschedular evaluation. See Thun v. Peake, 22 Vet. App. 111, 115 (2008); Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

With consideration of all of the above, the Board finds that entitlement to a compensable evaluation for the Veteran's epistaxis has not been established. While the record does reflect that the Veteran has recurrent nosebleeds, the evidence does not demonstrate that the Veteran suffers from 50 percent obstruction of the nasal passage on both sides, complete obstruction on one side, or polyps. Accordingly, the Board concludes that the preponderance of the evidence is against the claim for a higher evaluation, and the benefit of the doubt rule does not apply. See 38 U.S.C.A. § 5107 (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).


ORDER

New and material evidence having been received, the claim of entitlement to service connection for hypertension, is reopened, and to this extent only the claim is granted.

Entitlement to service connection for hypertension is denied.

Entitlement to an initial compensable rating for service-connected recurrent epistaxis is denied.

REMAND

The Veteran is service-connected for bilateral foot callus condition, currently evaluated as 10 percent disabling. In an April 2009 rating decision, the RO relied on an October 2008 VA examination in assigning the Veteran's 10 percent evaluation. However, in a May 2010 letter, the Veteran by way of his attorney asserted that his foot condition has worsened since the October 2008 VA examination. The Veteran is therefore asserting that his bilateral foot callus condition has increased in severity since the October 2008 VA examination. As such, a new VA examination is warranted. See VAOPGCPREC 11-95 (1995) (a new examination is appropriate when there is an assertion of an increase in severity since the last examination). Caffrey v. Brown, 6 Vet. App. 377 (1995); Green v. Derwinski, 1 Vet. App. 121 (1991).

Accordingly, the case is REMANDED for the following action:

1. The RO/AMC should schedule the Veteran for a VA examination to determine the current severity of the Veteran's service-connected bilateral foot callus condition. The claims folder must be made available to the examiner for review, and the examination report should reflect that such review was completed. All indicated tests should be performed and the findings reported in detail. Application of 38 C.F.R. § 4.40 regarding functional loss due to pain and 38 C.F.R. 
§ 4.45 regarding weakness, fatigability, incoordination or pain on movement of a joint should be considered. See DeLuca v. Brown, 8 Vet. App. 202, 206 (1995). A complete rationale should be given for all opinions and conclusions expressed.

2. After completion of the above, and any other development deemed necessary, review the expanded record and determine if the evidence is sufficient to warrant entitlement to the benefits sought. Unless the benefits sought on appeal are granted, the Veteran and his attorney should be furnished an appropriate supplemental statement of the case and afforded an opportunity to respond.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).




______________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs