﻿Citation Nr: AXXXXXXXX
Decision Date: 06/25/19 Archive Date: 06/24/19

DOCKET NO. 190306-5831
DATE: June 25, 2019

ORDER

Readjudication of the claim for service connection for a bilateral hearing loss disability is warranted.

Readjudication of the claim for service connection for tinnitus is warranted.

Service connection for a bilateral hearing loss disability is denied.

Service connection for tinnitus is denied. 

FINDINGS OF FACT

1. New evidence received after the March 2015 denial is relevant to the issue of entitlement to service connection for a bilateral hearing loss disability. 

2. New evidence received after the March 2015 denial is relevant to the issue of entitlement to service connection for tinnitus. 

3. The preponderance of the evidence is against finding that bilateral hearing loss had its onset in service or manifested to a compensable degree within the applicable presumptive period; or that there is continuity of symptomatology; or that the disability is otherwise etiologically related to in-service noise exposure.

4. The preponderance of the evidence is against finding that tinnitus had its onset in service or manifested to a compensable degree within the applicable presumptive period; or that there is continuity of symptomatology; or that the disability is otherwise etiologically related to in-service noise exposure.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for service connection for a bilateral hearing loss disability have been met. 84 Fed. Reg. 138, 169 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.156(d)).

2. The criteria for readjudicating the claim for service connection for tinnitus have been met. 84 Fed. Reg. 138, 169 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.156(d)). 

3. The criteria for service connection for bilateral hearing loss are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

4. The criteria for service connection for tinnitus are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decision on appeal was issued in October 2018. In January 2019, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). 

The Veteran served on active duty from December 1953 to October 1955. The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the February 2019 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Evidence was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). The Veteran, or his representative, may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

The new and material evidence issues regarding bilateral hearing loss and tinnitus have been recharacterized to reflect the applicable evidentiary standard. 84 Fed. Reg. 138, 172, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. §§ 3.2501(a)(1), 19.2).

This appeal has been advanced on the Board’s docket pursuant to 38 C.F.R. § 20.800(c). 38 U.S.C. § 7107(b).

New and Relevant Evidence

1. Whether new and relevant evidence was presented to warrant readjudicating the claim for service connection for a bilateral hearing loss disability. 

2. Whether new and relevant evidence was presented to warrant readjudicating the claim for service connection for tinnitus. 

Issues 1-2. The Veteran, and his representative, contends that he submitted evidence with his legacy system petition to reopen the claims for service connection for bilateral hearing loss and tinnitus that is new and relevant and warrants readjudication of the issues. See May 2019 Appellate Brief. 

The questions in this case are whether the Veteran submitted evidence after the prior final denial of his claims for service connection for bilateral hearing loss and tinnitus in the legacy system, and if so, whether that evidence is new and relevant to his claims.

The Board finds that new evidence was submitted after the March 2015 rating decision in the legacy system and that it is relevant to the claims. 84 FR 138, 169 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.156(d)).

VA will readjudicate a claim if new and relevant evidenced is presented or secured. Id. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501(a)(1)). 

Here, the Veteran’s claims of entitlement to service connection for bilateral hearing loss and tinnitus were denied in a March 2015 rating decision. The claims were denied because the evidence showed that the Veteran’s bilateral hearing loss and tinnitus did not have their onset in service, manifest to a compensable degree within a year of service, or were otherwise etiologically related to his active service. VA notified the Veteran of this decision in a March 2015 letter and how to appeal. VA received no response to this letter, to include an appeal or new and material evidence prior to expiration of the appeal period. As such, the March 2015 rating decision became final. 38 U.S.C. §§ 5103, 5103A, 5108, 7105(c); 38 C.F.R. §§ 3.102, 3.156(a), 20.1103.

Evidentiary submissions received by VA since the March 2015 prior final denial includes, among other things, the Veteran’s petitions to reopen, VA treatment records, lay assertions by the Veteran, and a September 2018 hearing loss and tinnitus VA examination report. The Veteran’s assertions that his hearing loss and tinnitus are related to, or had their onset in, service are not new insofar as they are redundant or cumulative of prior assertions made and considered by a prior adjudicator. However, the medical evidence is new and relevant; specifically, the September 2018 VA examination report reflecting that the Veteran’s bilateral hearing loss and tinnitus had their onset 23 years after service and are not etiologically related to his military service. As this evidence tends to disprove that the Veteran’s bilateral hearing loss and tinnitus had their onset during active service, manifested to a compensable degree within a year of service, or are otherwise etiologically related to his active service, it is relevant. See 84 Fed. Reg. 138, 172 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501(a)(1)).

Given the above, the Board finds that new and relevant evidence has been received since the March 2015 prior final disallowance of the claims for service connection for bilateral hearing loss and tinnitus. Id.

Therefore, readjudication of the claims is warranted.

Service Connection

Compensation may be awarded for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131. Service connection basically means that the facts, shown by evidence, establish that an injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 C.F.R. § 3.303.

Service connection may be granted for any disease diagnosed after discharge, when the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Establishing service connection generally requires (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff’d per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a), (d).

For explicitly recognized chronic diseases (38 C.F.R. § 3.309(a)), service incurrence or aggravation may be established under 38 C.F.R. § 3.303(b) by demonstrating continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). For organic diseases of the nervous system (e.g. sensorineural hearing loss and tinnitus), the disability is considered to have been incurred in or aggravated by service although not otherwise established during the period of service if manifested to a compensable degree within one year following service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

It is noted that the absence of in-service evidence of hearing loss disability is not fatal to a claim for service connection for hearing loss disability. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Evidence of a current hearing disability (i.e., one meeting the requirements of section 3.385, as noted above) and a medically sound basis for attributing such disability to service may serve as a basis for a grant of service connection for hearing loss. See Hensley v. Brown, 5 Vet. App. 155 (1993). The threshold for normal hearing is from 0 to 20 decibels. Id.

3. Entitlement to service connection for tinnitus. 

4. Entitlement to service connection for a bilateral hearing loss disability. 

Issues 3-4. Having reopened the bilateral hearing loss and tinnitus claims on the basis of this new and relevant evidence, the Board must next determine whether the Veteran would be unduly prejudiced by the Board immediately proceeding with the readjudication of the claims on its underlying merits. See Hickson v. Shinseki, 23 Vet. App. 394, 399-400 (2010) (noting that where the Board reopens a claim, but the AOJ did not, the claim must be remanded for AOJ consideration unless there is a waiver from the appellant or no prejudice would result from the readjudication of the claim); Bernard v. Brown, 4 Vet. App. 384, 393-94 (1993) (noting that the Board must consider whether a veteran is prejudiced by a lack of AOJ consideration of the merits of a claim). 

The Board finds that adjudication of the bilateral hearing loss and tinnitus claims on a de novo basis is appropriate at this juncture. A review of the October 2018 and February 2019 rating decisions reflect that the AOJ considered the service connection claims. Specifically, the AOJ found that the Veteran’s bilateral hearing loss and tinnitus (1) was not incurred in or aggravated by service, (2) did not manifest to a compensable degree within the one-year presumptive period, and (3) were not etiologically related to his military service. Thus, the Board’s proceeding with the service connection issues, without a remand to the AOJ, will not prejudice the Veteran.

The Veteran, and representative, contends that he has a present hearing loss disability and tinnitus due to military noise exposure. See May 2019 Appellate Brief. Specifically, the Veteran argues that his hearing loss and tinnitus stem from his artillery military occupation. See August 2018 VA 21-4128.

The AOJ found that the Veteran has a current diagnosis of bilateral hearing loss and tinnitus. 

The question in this case is whether the Veteran’s disabilities had their onset in service, manifested to a compensable degree within the applicable presumptive period, or are otherwise etiologically related to his active service.

The Board concludes that, while the Veteran has a hearing loss disability as defined by VA at 38 C.F.R. § 3.385 and a diagnosis of tinnitus, the preponderance of the evidence is against finding that either disability had its onset during active service or manifested to a compensable degree within the applicable presumptive period; or is otherwise etiologically related to in service disease or injury, including noise exposure. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385.

In this case, service treatment records (STRs) reflect that the Veteran’s bilateral hearing was within normal limits on May 1953 service entrance examination. While the October 1955 service examination report does not include audiometric findings, it does stipulate that both right and ear whispered voice (WV) acuity of 15/15 stock volume (SV), rendered as bilateral hearing of 15/15. The U.S. Court of Appeals for the Federal Circuit has noted that the results of a whispered voice test do not exclude the possibility of hearing damage in the higher frequency ranges. Fagan v. Shinseki, 573 F.3d 1282, 1284 (Fed. Cir. 2009).

Post-service VA medical treatment records, ranging from April 2002 to August 2018, reflect that the Veteran reported hearing loss and tinnitus in February 2012 and the use of hearing aids in February 2018. Prior to February 2012, the Veteran was negative for hearing loss. See, e.g., October 2011 CAPRI (August 2018). Moreover, a December 1955 VA examination reflects a 20/20 WV for both the right and left ear. The Veteran additionally did not report hearing loss or tinnitus at the December 1955 examination. Indeed, the only annotation concerning the ears was that the Veteran had wax in both ears. 

As mentioned above and discussed further below, the medical evidence overall does not show that bilateral hearing loss and tinnitus are etiologically linked to noise exposure during the Veteran’s active service. In assisting the Veteran, VA obtained two examinations. 

VA examination report, dated March 2015, reflects a hearing loss disability as defined by VA at 38 C.F.R. § 3.385 and a diagnosis of tinnitus. The examiner concluded that the Veteran’s disabilities were less likely than not (less than 50% probability) caused by or a result of military noise exposure. In support of this conclusion, the examiner considered the Veteran’s lay statements, the entrance and separation examination reports, a December 1955 VA examination report, and that the Veteran reported hearing loss 50 years after service. Moreover, the examiner cited to the Institute of Medicine’s (IOM) 2006 report entitled Noise and Military Service: Implications for Hearing Loss and Tinnitus. Referencing this report, and other supporting documentation, the examiner concluded that noise-induced hearing loss does not support the concept of delayed onset years following exposure to noise. In support of finding that the Veteran’s tinnitus was not related to service, the examiner noted that the Veteran’s STRs were extensive for other conditions, but not for tinnitus. Additionally, the examiner considered that the Veteran underwent a VA examination in December 1955, in which, he did not complain of experiencing tinnitus. 

VA examination report, dated September 2018, reflects a hearing loss disability as defined by VA at 38 C.F.R. § 3.385 and a diagnosis of tinnitus. The examiner concluded that the Veteran’s disabilities were less likely than not (less than 50% probability) caused by or a result of military noise exposure. In making this conclusion, the examiner reviewed the claims file, considered the Veteran’s artillery military occupation (finding that there was a moderate possibility of noise exposure), and the Veteran’s post-service occupation. Additionally, the examiner considered, among other things, that after service, the Veteran worked in carpentry for 35 years which she noted as being excessively noisy; three family members of the Veteran have hearing loss; the Veteran reported the onset of hearing loss 40 years ago, circa 1978; and the IOM’s 2006 report entitled Noise and Military Service: Implications for Hearing Loss and Tinnitus. In support of finding that the Veteran’s tinnitus was not related to service, the examiner, among other things, noted that the Veteran reported the onset of his tinnitus 40 years ago, circa 1978; cited to the IOM’s 2006 report; and found that tinnitus would occur at the time of exposure and remain constant.

The Board finds the March 2015 and September 2018 examinations and medical opinions, taken together, of high probative weight for the following reasons: The medical opinions are based on sufficient facts and data (in this case, the Veteran’s lay statements, treatment records, in-person examinations of the Veteran, and medical literature); the medical opinions are the product of reliable principles and methods; and the result of principles and methods reliably applied to the facts. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302 (2008) (citing to Federal Rules of Evidence on expert witnesses). Further, the medical examination reports contain clear conclusions with supporting data, and also a reasoned medical explanation connecting the two. Id. at 301. The Board is cognizant of McCray v. Wilkie, No. 17-1875, 2019 Vet. App. LEXIS 1015, at *1-2 (Vet. App. June 18, 2019), holding that “a medical text’s qualifying or contradictory aspects may affect the probative value and adequacy of any ensuing medical opinion that relies on the text.” In this regard, both the March 2015 and September 2018 medical opinions cited to the IOM’s 2006 report entitled Noise and Military Service: Implications for Hearing Loss and Tinnitus, of which, the Veteran challenges. See January 2019 Correspondence. The Veteran specifically argues that although the “study did not establish a positive nexus between hearing loss and military service, neither did it rule out the possibility of a nexus to in-service events.” In the Veteran’s case, both the March 2015 and September 2018 examiners, in forming their conclusions, partially relied on the findings of the IOM report. However, the examiners also cited and discussed other factors that were more likely to have caused his hearing loss and tinnitus. For instance, the March 2015 examiner, in forming her conclusion, cited to the Veteran’s entrance and separation examination reports, a December 1955 VA examination report, the passage of time between service and the first documented findings or complaints of hearing loss and tinnitus, and the Veteran’s reported history of hearing loss; on the other hand, the September 2018 examiner, in forming her conclusion, considered the Veteran’s post-service occupation (carpentry for 35 years), three family members of the Veteran having hearing loss, and the Veteran’s reported history of hearing loss. While there are contradictory aspects to the IOM’s report, the court in McCray, referenced “a medical text’s qualifying or contradictory aspects” as a factor on a non-exhaustive list that is relevant to the Board’s evaluation of probative value and adequacy of a medical opinion. Id. at *23. The examiners, in this case, did not rely entirely on the report in forming their conclusion. Therefore, in assessing the impact of apparently qualifying or contradictory statements in the medical text on the probative value and adequacy of the negative VA medical opinions, the Board finds the March 2015 and September 2018 medical opinions to be of high probative value.

While the Veteran is competent to describe his hearing symptoms, he is not competent to establish the existence of a hearing loss disability as defined by 38 C.F.R. § 3.385 in service or to formulate a competent medical opinion linking delayed onset hearing loss to active service, including noise exposure. See Jandreau v. Nicholson, 492 F.3d. 1372 (2007); see also Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (although it is error to categorically reject a non-expert opinion as to etiology, or nexus, not all questions of nexus are subject to non-expert opinion; whether a layperson is competent to provide a nexus opinion depends on the facts of the particular case). Also, to the extent that the Veteran suggests the onset and ongoing symptoms of hearing loss and tinnitus since service, the Board finds this is not credible in view of his STRs and post-service medical examinations, as discussed above. Therefore, the Board finds that the Veteran’s opinion has no probative value in this matter. He has not identified nor provided a favorable medical opinion to weigh in this matter.

The Board assigns greater probative value to the Veteran’s medical records, which contain no complaints of tinnitus or hearing loss for over 50 years after separation from service. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (contemporaneous evidence has greater probative value than history as reported by the claimant). The Board additionally finds the March 2015 and September 2018 medical opinions highly probative. The VA medical opinions on the Veteran’s hearing loss and tinnitus were prepared by a medical examiner with general knowledge, skill, and expertise in common disorders of the bodily systems, to include the auditory system. The VA medical opinions on the Veteran’s hearing loss and tinnitus reflects a review of the claims file and the reports cite to specific information in the claims file. Moreover, the examiners’ opinions are probative, because they are based on an accurate medical history and provide an explanation that contains clear conclusions and supporting data. Nieves-Rodriguez, 22 Vet. App. at 304. Lastly, the Board assigns greater probative value to the decades intervening active service and the first documented findings or complaints of hearing loss and tinnitus. Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006); see also Maxson v. West, 12 Vet. App. 453, 459 (1999), aff’d sub nom., Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (holding that the Board may take into consideration the passage of a lengthy period of time in which the Veteran did not complain of the disorder at issue); Forshey v. West, 12 Vet. App. 71, 74 (1998), aff’d sub nom., Forshey v. Principi, 284 F.3d 1335, 1358 (Fed. Cir. 2002) (finding that the definition of evidence encompasses “negative evidence” which tends to disprove the existence of an alleged fact).

On balance, the weight of the evidence is against the claims.

(Continued on the next page)

 

Accordingly, the claims are denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

 

C.A. SKOW

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A. Griffey, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.