﻿Citation Nr: AXXXXXXXX
Decision Date: 01/30/20 Archive Date: 01/30/20

DOCKET NO. 190130-3219
DATE: January 30, 2020

ORDER

Entitlement to service connection for diabetes mellitus type II is granted.

Entitlement to service connection for hypertension is denied.

A rating higher than 20 percent for degenerative arthritis of the thoracolumbar spine with intervertebral disc syndrome (formerly spondylolisthesis with probable herniated nucleus pulposis lumbar spine at L-5, S-1 level with nerve root compression) (hereinafter “back disability”) is denied.

A rating higher than 10 percent for right lower extremity (RLE) radiculopathy is denied.

A rating higher than 10 percent for left lower extremity (LLE) radiculopathy is denied.

FINDINGS OF FACT

1. The Veteran had service in the offshore waters, DaNang Harbor, of the Republic of Vietnam; his exposure to herbicide agents is presumed under 38 U.S.C. § 1116A; and his diabetes mellitus is presumptively associated his with herbicide exposure in service.

2. The preponderance of the evidence is against finding that hypertension began during active service, manifested to a compensable degree within one year after discharge, was noted in service with continuity of symptomatology, or is otherwise related to an in-service injury or disease to include herbicide exposure.

3. The Veteran’s back disability is not more nearly manifested by forward flexion of the thoracolumbar spine to 30 degrees or less, favorable ankylosis of the entire thoracolumbar spine, or incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months.

4. The Veteran’s RLE radiculopathy is not more nearly manifested by moderate incomplete paralysis of the sciatic nerve.

5. The Veteran’s LLE radiculopathy is not more nearly manifested by reflect moderate incomplete paralysis of the sciatic nerve.

CONCLUSIONS OF LAW

1. The criteria for service connection for diabetes are met. 38 U.S.C. §§ 1110, 1112, 1113, 1116A, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309(a), (e).

2. The criteria for service connection for hypertension are not met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The criteria for a rating higher than 20 percent for back disability are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5243.

4. The criteria for a rating higher than 10 percent for RLE radiculopathy are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8720.

5. The criteria for a rating higher than 10 percent for LLE radiculopathy are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8720.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 1969 to October 1972 in the U.S. Navy.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from a July 2018 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO) following the Veteran’s election to participate in the Rapid Appeals Modernization Program (RAMP). In January 2019, the Board received the RAMP appeal of the July 2019 rating decision, wherein he requested Direct Review of the evidence by a Veterans Law Judge under the Appeals Modernization Act (AMA) review system. See VA Form 21-4138 (January 2019). See also 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2 (d)).

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

Certain chronic diseases, such as hypertension, will be presumed related to service, absent an intercurrent cause, if they were shown as chronic in service; or, if they manifested to a compensable degree within a presumptive period following separation from service; or, if they were noted in service (or within an applicable presumptive period) with continuity of symptomatology since service that is attributable to the chronic disease. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.303, 3.307, 3.309. Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013).

Service connection based on exposure to designated herbicide agents will be presumed for certain specified diseases that become manifest to a compensable degree within a specified period of time in the case of certain diseases. diabetes is a disease associated with herbicide exposure for purposes of the presumption. 38 U.S.C. § 1116(a)(2); 38 C.F.R. § 3.309. In January 2019, the United States Court of Appeals for the Federal Circuit (Federal Circuit) issued a decision in Procopio v. Wilkie, 913 F.3d 1371, 1380-81 (Fed. Cir. 2019) (en banc), where the Federal Circuit held that veterans who “served in the 12 nautical mile territorial sea of the ‘Republic of Vietnam’” are entitled to service connection under 38 U.S.C. § 1116. Subsequently, legislation was enacted that added 38 U.S.C. § 1116A, providing in part for a presumption of herbicide agent exposure for Veterans who served offshore of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975. Offshore is defined as being in a location not more than 12 nautical miles seaward of a line commencing on the southwestern demarcation line of the waters of Vietnam and Cambodia and intersecting several specific latitude and longitude points. 38 U.S.C. § 1116A.

1. Service connection for diabetes

The Veteran contends that his diabetes mellitus type II is due to or the result of herbicide exposure during active service. He argues that, while “in a rib boat that escorted ships personnel to shore to handle whatever business they had to handle” while the U.S.S. Horne docked in DaNang Harbor. See VA 21-4128 (June 2017), VA 21-0781 (June 2017), NOD (April 2018). He also reports being “less than a half mile off the coast of North Vietnam” when planes and helicopters went down. See Correspondence (March 2018).

It is uncontroverted that the Veteran has type 2 diabetes mellitus. See Medical Treatment Record (January 2018). 

The Board concludes that the Veteran’s diabetes is presumptively associated with established exposure to herbicide agents in service. 38 U.S.C. §§ 1110, 1112, 1113, 1116A, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309(e).

Here, the Veteran’s service personnel records show that he was assigned to the U.S.S. Horne from September 1969 to June 1972. VA obtained verification through the JSCCR that the Veteran was within the territorial water of Vietnam, essentially within 12 nautical miles. It was noted that “On July 22, 1971, the ship entered DaNang, Republic of Vietnam (RVN) Harbor at 0812 hours, departing there at 1128 hours the same date.” See Military Personnel Record (April 2018). The evidence establishes that the Veteran had service in the offshore waters, DaNang Harbor, of the Republic of Vietnam. See DPRIS Response (October 2017). Therefore, the Veteran’s exposure to herbicide agents is presumed under 38 U.S.C. § 1116A. 

VA regulations provide that if a veteran was exposed to an herbicide agent during active military, naval, or air service, certain diseases shall be service connected if the requirements of 38 C.F.R. § 3.307(a) are met, even if there is no record of such disease during service. These diseases include type 2 diabetes. 38 C.F.R. § 3.309(e).

Accordingly, the evidence of record establishes that the Veteran has diabetes mellitus presumptively associated his with herbicide exposure in service.

2. Service connection for hypertension

The Veteran contends that he has hypertension due to exposure to herbicide agents.

The Board notes that hypertension is not a disease presumptively associated with herbicide exposure. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307(a)(6), 3.309(e). Notwithstanding, service connection may be established with proof of direct causation. Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994); see also McCartt v. West, 12 Vet. App. 164, 167-68 (1999) (providing that the provisions set forth in Combee are equally applicable in cases involving claimed Agent Orange exposure).

For VA purposes, “hypertension” means that diastolic blood pressure is predominately 90 mm. or greater; “isolated systolic hypertension” means that the systolic blood pressure is predominately 160 mm. or greater with a diastolic blood pressure of less than 90 mm. See 38 C.F.R. § 4.104, Diagnostic Code 7101, Note 1. Hypertension is not a presumptive disease due to exposure to herbicide agents under 38 C.F.R. § 3.309.

The Board concludes that, while the Veteran has been diagnosed with hypertension, the preponderance of the evidence is against finding that it was shown as chronic in service; manifested to a compensable degree within the applicable presumptive period; was noted in service with continuity of symptomatology; or is otherwise etiologically related to an in-service injury or disease. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

STRs reflect no findings or treatment for hypertension. A June 1972 examination reflects that the Veteran had blood pressure of 110/70 (systolic/ diastolic).

VA received an original claim for disability compensation from the Veteran in February 1976. He did not report hypertension. See VA Form 21-526 (February 1976). An April 1976 VA examination reflects, on review of systems, that the cardiovascular system had bradycardia present; there was no history for or diagnosis of hypertension, and blood pressure was 100/50.

Hypertension is first documented in March 2010 private treatment records, decades after the Veteran’s service discharge. 

The competent, credible evidence of record reflects that the Veteran did not have hypertension in service or that it manifested to a compensable degree within one year after discharge. Further, the competent, credible evidence of record reflects no indication that currently diagnosed hypertension is etiologically related to an in-service injury or disease.

The Veteran is not competent to diagnose himself with hypertension as this is not susceptible to lay observation; and the etiology of a disease process due to herbicide exposure is beyond the expertise of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). The Veteran has not submitted medical evidence in support of his claim. 

The Board assigns greater probative value to the STRs, with no diagnosis of hypertension, coupled with the decades intervening service and the first documented findings for hypertension. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (contemporaneous evidence has greater probative value than history as reported by the claimant). See also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (2006); see also Maxson v. West, 12 Vet. App. 453, 459 (1999), aff’d sub nom., Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (holding that the Board may take into consideration the passage of a lengthy period of time in which the Veteran did not complain of the disorder at issue); Forshey v. West, 12 Vet. App. 71, 74 (1998), aff’d sub nom., Forshey v. Principi, 284 F.3d 1335, 1358 (Fed. Cir. 2002) (finding that the definition of evidence encompasses “negative evidence” which tends to disprove the existence of an alleged fact).

Here, VA did not obtain a VA examination or opinion in this matter. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006) (VA’s duty to provide an examination only triggered if the evidence of record “indicates” that the claimed disability or symptoms “may be” associated with the established event). However, the Veteran’s bare contentions that hypertension is due to exposure to herbicide agents in service is not enough to trigger VA’s duty to obtain a VA examination and/or medical opinion. See Waters v. Shinseki, 601 F.3d 1274, 1278-79 (Fed. Cir. 2010) (a veteran’s own general conclusory statement does not meet the low threshold of an indication that the claimed condition is due to service).

On balance, the weight of the evidence is against the claim.

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

Increased Ratings

Disability ratings are assigned in accordance with VA’s Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. Separate diagnostic codes (DCs) identify the various disabilities. See generally 38 C.F.R. Part 4. If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

3. A rating higher than 20 percent for back disability

The Veteran appeals the July 2018 rating decision, which denied a rating in excess of 20 percent for back disability. He has offered no specific contentions in support of the assignment of a higher rating.

The Veteran’s back disability is rated under 38 C.F.R. § 4.71a, Diagnostic Code 5243. Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine. 

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately under an appropriate diagnostic code. Id. at Note 1. 

Ankylosis is defined as “immobility and consolidation of a joint due to disease, injury, or surgical procedure.” Dorland’s Illustrated Medical Dictionary, 94 (32nd ed. 2012). Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id. at Note 5. [Include any other relevant Note(s).]

When evaluating a disability of the musculoskeletal system, consideration must be given to the provisions of 38 C.F.R. §§ 4.40 and 4.45. DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Nonetheless, even when the background factors listed in § 4.40 or 4.45 are relevant when evaluating a disability, the rating is assigned based on the extent to which motion is limited, pursuant to 38 C.F.R. § 4.71a; a separate or higher rating under § 4.40 or 4.45 itself is not appropriate. See Thompson v. McDonald, 815 F.3d 781, 785 (Fed. Cir. 2016) (“[I]t is clear that the guidance of § 4.40 is intended to be used in understanding the nature of the veteran’s disability, after which a rating is determined based on the § 4.71a criteria.”).

The Board concludes that the preponderance of the evidence is against a rating in excess of 20 percent for back disability. Neither the lay nor the medical evidence more nearly reflects the functional equivalent of forward flexion limited to 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine; or prescribed bed rest by a physician for a duration that meets the criteria for a higher rating. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, General Rating Formula, Diagnostic Code 5243.

A February 2018 VA examination reflects forward flexion to 40 degrees; extension to 10 degrees; left lateral flexion to 5 degrees; right lateral flexion to 10 degrees; right lateral rotation to 10 degrees; and left lateral rotation to 20 degrees with pain on all ranges of motion (95 degrees combined). Pain noted on examination caused functional loss. The examiner was unable to perform repetitive use testing due to pain. The Veteran had tenderness to palpation along the lumbar spine, paraspinal muscle tenderness with muscle spasm, and pain on weight bearing. There was no ankylosis of the spine. X-ray documented arthritis, and MRI showed a bulging disc of lumbar spine L5-S1, L3-4, L2-3. See VA Examination (February 2018).

Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011). Here, the Veteran choice to decline to perform repetitive use testing is not the equivalent of a finding of no range of motion. But rather, his choice yielded no additional range of motion findings, including findings for additional loss of motion following repetitive use due to pain, for which the Board to consider in this matter.

Although the Veteran reported flare-ups on his January 2018 VA examination, which he characterized as an intense stabbing low back pain with numbness and weakness to the legs occurring several times per month and lasting for several days or weeks, the Board finds statements not credible in view of private treatment records. His private treatment records include contemporaneous statements made to his primary care physician as to the frequency and severity of his symptoms of back disability in pursuit of treatment just months before. Specifically, a November 2017 private treatment notes show complaints of lumbar pain with right leg pain that had been going on for several months now with some left sided pain (11/08/2017) and numbness in the anterior part of his upper leg when he stands for a long time or stoops for long periods of time which resolves very quickly once he sits or lies down with no numbness or tingling otherwise (11/17/2017). See Medical Treatment Record - Non-Government Facility at 87-88 (January 2018). The record contains no other treatment for the Veteran’s back disability proximate to or during the appeal period. When seen by his primary care provider, the Veteran did not report flare-ups lasting for several days or weeks. Therefore, the Board finds that the Veteran’s report of severity has diminished probative value. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (contemporaneous evidence has greater probative value than history as reported by the claimant).

The Board assigns greater probative to the January 2018 VA examination findings along with the private treatment records dated since 2016 and the date of the Veteran’s RAMP opt-in election. The Board notes that there are no private treatment records dated after December 2017.

There is no basis to assign a higher or separate rating for service-connected back disability. See DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995); see also 38 C.F.R. §§ 4.40, 4.45, 4.59. Consideration has also been given to assigning a rating under the Formula for Rating IVDS Based on Incapacitating Episodes. However, the evidence of record is against a finding that the Veteran was ever prescribed bed rest by a physician for a duration that meets the criteria for a higher rating, and the Veteran has not contended otherwise. See 38 C.F.R. § 4.71a, Formula for Rating IVDS Based on Incapacitating Episodes. Regarding neurological impairment, the Veteran has already been granted service connection for radiculopathy and the lay and medical evidence of record is against a finding that the Veteran has any other neurological abnormality associated with his spine disability.

Whether a disability meets the schedular criteria for the assignment of a higher evaluation is a factual determination by the Board based on the complaints coupled with the medical evidence. Here, although the Veteran may believe that he meets the criteria for higher disability ratings for the spine, neither his complaints nor the medical findings reflect the functional equivalent of forward flexion limited to 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine. Also, prescribed bed rest by a physician for a duration that meets the criteria for a higher rating is not shown.

As the disability did not meet the criteria for a higher rating at any time during the appeal period, staging of the disability rating is not warranted. See Hart v. Mansfield, 21 Vet. App. 505 (2007) (staged ratings are appropriate when the factual findings show distinct period where the service-connected disability exhibits symptoms that would warrant different ratings); see also Fenderson v. West, 12 Vet. App. 119, 126 (2001).

On balance, a preponderance of the evidence is against finding that the criteria for a rating higher than 20 percent for back disability is warranted. The Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3.

4. A rating higher than 10 percent for RLE radiculopathy

5. A rating higher than 10 percent for LLE radiculopathy

Issues 4-5: The Veteran appeals a July 2018 rating decision, which denied (1) a rating in excess of 10 percent for RLE radiculopathy and (2) a rating in excess of 10 percent for LLE radiculopathy. He has offered no specific contentions in support of the assignment of higher ratings.

The Board concludes that the preponderance of the evidence is against finding that either RLE or LLE radiculopathy is more nearly manifested by moderate or worse sciatic nerve impairment. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.124a, Diagnostic Code 8720.

The Veteran’s radiculopathy is rated under 38 C.F.R. § 4.124a, Diagnostic Code 8520. Paralysis of the sciatic nerve is evaluated in accordance with the criteria set forth in 38 C.F.R. § 4.124a, Diagnostic Code 8520. (Neuritis and neuralgia of that group are evaluated under Diagnostic Codes 8620 and 8720.). Under these criteria, mild incomplete paralysis is rated as 10 percent disabling. Moderate incomplete paralysis is rated as 20 percent disabling. Moderately severe incomplete paralysis is rated as 40 percent disabling. Severe incomplete paralysis, with marked muscular atrophy is rated as 60 percent disabling. Complete paralysis, in which the foot dangles and drops, with no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost is rated as 80 percent disabling. 38 C.F.R. § 4.124a. 

The words “mild,” “moderate,” and “severe” as used in the various Diagnostic Codes are not defined in the Rating Schedule. Regulations provide that ratings for peripheral neurological disorders are to be assigned based the relative impairment of motor function, trophic changes, or sensory disturbance. 38 C.F.R. § 4.120. Consideration is also given for loss of reflexes, pain, and muscle atrophy. See 38 C.F.R. §§ 4.123, 4.124.

The term “incomplete paralysis” indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating is for the mild, or at most, the moderate degree. The disability ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. 38 C.F.R. § 4.124a, Note at “Diseases of the Peripheral Nerves.” The Note to 38 C.F.R. § 4.124a establishes a maximum disability rating for conditions that are wholly sensory, as opposed to a minimum disability rating for conditions that are more than wholly sensory. See Miller v. Shulkin, 28 Vet. App. 376 (2017). 

The maximum rating which may be assigned for neuritis not characterized by organic changes will be moderately severe incomplete paralysis for sciatic nerve involvement. See 38 C.F.R. § 4.123. 

A January 2018 VA examination reflects that the overall severity of the Veteran’s radiculopathy was mild based on reported symptoms and clinical findings. As to radicular pain symptoms, the Veteran reported moderate constant pain and moderate intermittent pain involving the bilateral lower extremities; no paresthesias and/or dysesthesias of either extremity; and, while there was no RLE numbness, there was moderate numbness of the LLE. Notwithstanding symptoms of pain and numbness, the Veteran did not use any assistive devices as a normal mode of locomotion. Moreover, there were no objective findings for muscle atrophy, impaired motor function, or trophic changes. Muscle strength was 4/5 throughout the lower extremities, demonstrating active movement against some resistance. Sensory exam showed normal findings at the bilateral upper thigh, bilateral thigh/knee, right lower leg/ankle, and bilateral foot/toes. The only abnormal finding was at the left lower leg/ankle (L4/L5/SI). Reflex exam showed normal findings at both knees and left ankle; although reflexes were hypoactive (1+) at the right ankle, reflexes were not absent in either lower extremity. 

Neither the lay nor the medical evidence reflects that either foot dangles or drops.

To the extent that the Veteran reported on his January 2018 examination having flare-ups, as numbness occurring several times per month and lasting for several days or weeks, the Board finds that this statement is not credible in view of the objective medical findings that show no muscle atrophy or that he retains muscle strength with active movement against some resistance, coupled with incongruous history to his treating physician. Private treatment records reflect that in November 2017 the Veteran was seen for right and left leg pain associated with lumbar pain along with “some numbness” of the upper leg when he stands for a long period of time or stoops over for a long period of time. However, the Veteran reported that “it resolves very quickly after he gets off his feet.” Therefore, the Veteran’s statements regarding flare-ups have diminished probative value. See Caluza v. Brown, 7 Vet. App. 498, 511, 512 (1995), aff'd per curium, 78 F.3d. 604 (Fed. Cir. 1996) (credibility can be affected by inconsistency with other evidence of record).

Except as otherwise indicated, the Board finds the lay and medical evidence probative. However, it does not more nearly reflect the presence of moderate or worse incomplete paralysis of the sciatic nerve as explained above. This determination is based on a holistic review of the Veteran’s reported symptoms and the objective medical findings, rather than based on any one symptom or finding.

Treatment records are negative for any findings of more than numbness and tingling in the legs. However, medical records document an extensive history of treatment for kidney stones and related flank pain.

As to RLE radiculopathy, the Board finds that the disability is primarily manifested by mild incomplete paralysis given that there is hypoactive reflex at the ankle along with moderate symptoms of radicular pain and numbness. Overall the impairment does not more nearly reflect moderate or worse disability given the above and considering that the disability is not manifested by impaired of motor functions, trophic changes, loss of reflexes, or muscle atrophy. The Board thus finds that the level of impairment is most analogous to mild incomplete paralysis.

As to LLE radiculopathy, the Board finds that the disability is primarily manifested by mild incomplete paralysis given that there are symptoms of mild sensory disturbance at the lower leg/ankle (decreased sensation to light touch) along with moderate symptoms of radicular pain and numbness bilaterally. Overall the impairment does not more nearly reflect moderate or worse disability given the above and considering that the disability is not manifested by impaired of motor functions, trophic changes, loss of reflexes, or muscle atrophy. The Board thus finds that the level of impairment is most analogous to mild incomplete paralysis.

The Board has considered all other potentially applicable Diagnostic Codes, but there is no evidence showing the Veteran has neurological impairment associated with any other peripheral nerves that have not already been service-connected. Therefore, a separate or higher rating under a different Diagnostic Code is not warranted. 

There is no basis assign a staged rating for either the RLE or LLE. See Hart, supra.

In denying a higher rating for the RLE and LLE, the Board finds the benefit of the doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. §§ 4.3, 4.7. 

Accordingly, the claims are denied. 

 

 

C.A. SKOW

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C.E., Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.